## BROOKS, CLERK, ET AL. v. STATE, EX REL. SINGER.

[No. 20,307. Filed May 11, 1904.]

STATES.—*Legislature.*—*Apportionment of Members.*—*Judicial Question.*—*Constitutional Law.*—When the validity of a legislative apportionment act is brought into dispute, the question becomes a judicial one, and the courts have the right to determine whether the discretion vested in the General Assembly has been exercised according to the restrictions put upon it by the Constitution. *pp. 576, 577.*

Brooks *v.* State, *ex rel.*

STATES.—*Legislature.*—*Apportionment of Members.*—*Right to Maintain Suit.*—
A legal voter of the State at the time the last preceding enumeration of
the male inhabitants for legislative purposes was taken may maintain
suit to test the constitutionality of an act of the General Assembly
based thereon apportioning the number of senators and representatives
of the State, though the wrong complained of does not exist in his own
senatorial or representative district.  *p. 577.*

SAME.—*Legislature.*—*Apportionment of Members.*—*Parties to Suit.*—The only
defendants necessary to a suit to test the constitutionality of a legisla-
tive apportionment act are the clerk, sheriff, and auditor of the county
in which the suit is brought.  *pp. 577, 578.*

SAME.—*Legislature.*—*Apportionment of Members.*—*Constitutional Law.*—The
apportionment act of 1903 (Acts 1903, p. 358) failed to apportion a sen-
ator to four contiguous counties though such counties contained 1,766
inhabitants more than the senatorial unit of 13,886, but added another
county to the district, which then contained an excess of 3,889. A
county contiguous to the county thus added was given a senator, al-
though it lacked 2,599 inhabitants of the senatorial unit. The act con-
tained other and similar inequalities. *Held*, that the act does not con-
form to the requirements of §§4-6, article 4, of the Constitution, and
that the act is void.  *pp. 578-580.*

From Ripley Circuit Court; *Willard New*, Judge.

Mandamus by the State of Indiana, on the relation of
James Singer, against Absalom J. Brooks and others.
From a judgment for plaintiff, defendants appeal. *Af-
firmed.*

*R. A. Cregmile* and *W. C. Mitchell,* for appellants.

*A. G. Smith, J. W. Kern, G. V. Menzies, T. P. Davis,
S. M. Ralston, M. A. Ryan, Bernard Korbly* and *Lincoln
Dixon,* for appellee.

DOWLING, J.—This suit was brought in the name of the
State, on the relation of James Singer, who is described in
the complaint as a resident of Ripley county, and a quali-
fied voter thereof, against the clerk, sheriff, and auditor of
Ripley county, for an alternative writ of mandate requir-
ing each of these officers to show cause why he should not
be compelled to perform the duties imposed upon him by
law in regard to the election of senators and representa-
tives to be held on Tuesday, November 8, 1904, under the
act of February 25, 1897, fixing the number of senators

and representatives to the General Assembly of the State of Indiana, and to apportion the same among the several counties of this State. Acts 1897, p. 65, §6681 *et seq.* Burns 1901. The real purpose of the action was to obtain a decision of this court upon the question of the constitutionality of the apportionment act of 1903 (Acts 1903, p. 358). The appellants, who were the defendants below, waived the issuing and service of the alternative writ, and demurred to the complaint. Their demurrer was overruled, and, upon their failure to plead further, judgment was rendered on the demurrer in favor of the appellee. From that judgment the defendants below appeal, and the error assigned is the ruling on the demurrer.

The complaint alleges that the plaintiff is a resident, a citizen, and a voter of Ripley county, and that the three persons named as defendants are, respectively, the clerk of the circuit court, and the sheriff and auditor of said Ripley county; that by the act of the General Assembly of the State of Indiana approved February 25, 1897, it was provided that the General Assembly of said State should consist of fifty senators and one hundred representatives, and, among other things, that the county of Ripley should constitute a representative district; that an election for members of the General Assembly of said State will be held on Tuesday, November 8, 1904, and that under the said act one representative should be elected in the representative district composed of the said county of Ripley; that the relator made a demand on the defendant Absalom J. Brooks, clerk of the circuit court of said county of Ripley, more than twenty days before the said election that said clerk should certify to the sheriff of said Ripley county that one representative in the said representative district composed of said Ripley county is to be elected; that said relator also made a demand upon the defendant Henry Voss, sheriff of said county, that he, as such sheriff, should give fifteen days' notice of the election of such representative

at said general election, by posting at the usual places of holding elections in his said county a copy of the certificates of said election so demanded by the relator to be issued by the clerk of said county when the same should be received by said sheriff, and by one publication thereof in a newspaper of general circulation in his said county, if any there be, and that the said sheriff should also deliver a copy of said certificate to the township trustee of each township within said county; that the said relator had made a demand upon the defendant Nicholas Volz, auditor of said county, that he should make out and cause to be delivered to the duly appointed inspectors of election for the several precincts of said county, at least ten days prior to the time of holding said general election, a suitable number of blank forms, poll-books, and election returns, with proper captions, forms of oaths, certificates, and tally papers, to be used by the election officers of said precincts at said election properly to register, certify, and return the votes cast for the election of said representative, but that each of said officers wholly refused and refuses to comply with such demand, claiming and asserting that the said act of February 25, 1897, expired by limitation, because enacted prior to the enumeration of the male inhabitants of the State of Indiana, over the age of twenty-one years, taken pursuant to law in the year 1901, and that the same was repealed by an act fixing the number of senators and representatives to the General Assembly of this State, and to apportion the same among the several counties of this State, approved March 9, 1903, and that said officers give out and threaten that they will proceed to perform their said duties according to said last-named act alone; that the said act of March 9, 1903, is in conflict with §§4 and 5 of article 4 of the Constitution of the State of Indiana, for the reasons that in the year 1901 an enumeration of the male inhabitants of said State, over the age of twenty-one years, was taken under the authority and by the direction

of the General Assembly, as required by the Constitution (the enumeration referred to is then set out in the complaint, the total being 694,346); that it became the duty of the General Assembly at its session next following such enumeration, to wit, the sixty-third regular session, to fix the number of senators, not exceeding fifty, and representatives, not exceeding one hundred, and apportion them among the several counties according to the number of male inhabitants above twenty-one years of age, as shown by said enumeration, and that at said session the said General Assembly did attempt to discharge its duty under the Constitution by passing the said act of March 9, 1903; that in apportioning the senators and representatives upon the basis of the enumeration of 1901, each senatorial district should have contained 13,886 male inhabitants above the age of twenty-one years, as nearly as reasonably possible, and that each representative district should have contained 6,943 male inhabitants above the age of twenty-one years, as nearly as reasonably possible. (The apportionment made by the act of 1903 is next set out.) That by said act of March 9, 1903, forty-six counties are formed into twenty districts, to each of which one senator is apportioned; that ten of said districts, composed of twenty-eight counties, contained, by said enumeration of 1901, 159,767 male inhabitants above the age of twenty-one years, while the other ten of said districts, composed of eighteen counties, contained, by said enumeration, only 117,369 such inhabitants; that no other senatorial representation is given by said act to any of the counties contained in said first-mentioned districts, and that by such apportionment the senatorial representation of 42,398 male inhabitants above the age of twenty-one years of said districts, being three senators, with a fraction over of 740, is wrongfully denied to the counties contained in said ten districts, and is given to said counties contained in said second ten districts, whereby their representation, which

should be but eight senators, is increased to ten, and the representation of the counties contained in the first-mentioned ten districts is reduced to ten, when of right it should be eleven.

The names of the counties composing said twenty senatorial districts are next set out, with the number of male inhabitants above twenty-one years of age in each district, as shown by said enumeration, with the excess of such inhabitants in each of the first ten districts over each of those in the second-mentioned ten districts. The complaint then charges that by the act of March 9, 1903, the counties of Switzerland, Ohio, Dearborn, and Franklin, the number of whose male inhabitants over the age of twenty-one years, according to the said enumeration, was 15,652, being more than the senatorial unit, and which by reason thereof were entitled to have one senator apportioned to them, were denied such senator, and were united with the county of Union for the election of one senator, the district so constituted having an excess of 3,889 over the senatorial unit; that by the said act of March 9, 1903, the counties of Ohio, Dearborn, Franklin, and Union, whose male inhabitants over the age of twenty-one years, by said enumeration, were 14,345, being more than the senatorial unit, and which by reason thereof were entitled to have one senator apportioned to them, were denied such senator, and were united with the county of Switzerland for the election of one senator, such district having an excess of 3,829; that included in the second-mentioned districts are five districts, each of which is given a senator, although each of said districts lacks more than two thousand inhabitants of possessing the senatorial unit, while the counties of Switzerland, Ohio, Dearborn, and Franklin, which themselves possessed 1,766 more than the unit of senator, are denied a senator; that said five districts, and two other districts not heretofore named, are given senators by said act of March 9, 1903, while each of said districts lacks the sena-

torial unit as follows (the names of the counties compris-
ing these seven districts are set out, with the deficiency in
each district) ; that Wayne county, which is contiguous to
Union, is given a senator, although lacking 2,599 inhabi-
tants necessary to constitute the senatorial unit; that by said
act of March 9, 1903, forty counties are formed into
twenty-six districts, to each of which one representative
is apportioned; that such districts, as far as composed of,
counties entitled to any representation therein, are made
up of counties otherwise wholly unrepresented in the ap-
portionment for representatives, and counties having an
excess over the representative unit, which excess is other-
wise represented, and is alone entitled to representation in
said districts; that thirteen of said districts, composed of
twenty-four counties, contained, according to said enu-
meration of 1901, 109,314 male inhabitants over the age
of twenty-one years, who have no representation for repre-
sentatives in the General Assembly under said act, except
the thirteen representatives apportioned to said districts,
while the other thirteen of said districts, composed of six-
teen counties, contained, according to said enumeration,
only 75,006 such male inhabitants otherwise unrepre-
sented, by reason of which apportionment 34,308 male in-
habitants over the age of twenty-one years, in said first-
mentioned districts, who are entitled to fifteen representa-
tives, with a fraction of 5,169 of the representative unit,
are entirely deprived of such representation, and two of
such representatives are given, without right, to the second
group of thirteen districts, whereby their representation
is increased to thirteen, whereas, of right, it should be only
ten, and that of the first group of districts is reduced to
thirteen, whereas, of right, it should be fifteen; that said
twenty-six districts are composed of the following named
counties respectively. (Here follows a list of the counties,
one county from each district being given, and set the one

under the other, with the number of the male inhabitants over twenty-one years of age in each.)

The complaint then, in general terms, charges that in many other respects and instances the act of 1903 fails and omits to apportion the senators and representatives in the manner required by the Constitution. It is alleged that, by reason of these violations of the Constitution by and through the act of March 9, 1903, the constitutional rights of the relator as a citizen and an elector are impaired, abridged, and violated. The complaint concludes with a prayer for an alternative writ of mandate requiring the defendants, the clerk, sheriff, and auditor, to show cause why they should not be compelled by the order of the court to make the certificates, give the notices, and perform the other duties enjoined upon them in connection with the general election of November 8, 1904, agreeably to the provisions of the act of 1897, and not under the act of 1903.

The previous decisions of this court in similar cases have firmly settled many of the questions arising in this case, and it will not be necessary to enter upon an extended discussion of the principles by which we must be guided in determining the present controversy.

The rules of the Constitution (article 4) which regulate the apportionment of representation are these: "Section 2. The senate shall not exceed fifty, nor the house of representatives one hundred members; and they shall be chosen by the electors of the respective counties or districts into which the State may, from time to time, be divided." "Section 4. The General Assembly shall, at its second session after the adoption of this Constitution, and every six years thereafter, cause an enumeration to be made of all the male inhabitants over the age of twenty-one years. Section 5. The number of senators and representatives shall, at the session next following each period of making such enumeration, be fixed by law, and apportioned among the sev-

eral counties, according to the number of male inhabitants above twenty-one years of age in each: * * * Section 6. A senatorial or representative district, where more than one county shall constitute a district, shall be composed of contiguous counties; and no county, for senatorial apportionment, shall ever be divided."

It has been said by this court that it was the intention of the Constitutional Convention to secure to the electors of the State, by section six, *supra,* an equal voice, as nearly as possible, in the selection of those who should make the laws by which they were to be governed. The General Assembly has no discretion to make an apportionment in disregard of the enumeration provided for by the Constitution. The districting of the State for the apportionment of senators and representatives must proceed upon the basis of the enumeration of the male inhabitants over the age of twenty-one years, and it should be so adjusted as to secure to each voter of the State, as nearly as practicable, an equal voice with every other voter in the State in the choice of senators and representatives. The provisions of the Constitution on this subject are of the highest importance, and they are mandatory upon the legislature. While it is true that exact equality among the voters of the State can not be secured, it can be approximated, and the Constitution requires that it shall be approximated in every instance as nearly as practicable. The formation of districts containing large fractions unrepresented, where it is possible to avoid it, and the over-representation of other districts, are forbidden by the rule which requires an approximation to equality in the representation of the districts. The General Assembly has much discretion in the disposition of the fractions of the unit of representation, but that discretion must be exercised within the limitations of the Constitution. If it is abused, and the validity of an apportionment act is brought into dispute, the question becomes a judicial one and the courts have the right to de-

termine whether that discretion has been exercised according to the restrictions put upon it by the Constitution. *Parker* v. *State, ex rel.*, 133 Ind. 178, 18 L. R. A. 567; *Denney* v. *State, ex rel.*, 144 Ind. 503, 31 L. R. A. 726; *Fesler* v. *Brayton*, 145 Ind. 71, 32 L. R. A. 578. See, also, 2 Am. & Eng. Ency. Law (2d ed.), 480, and notes; *State, ex rel.*, v. *Cunningham*, 83 Wis. 90, 53 N. W. 35, 17 L. R. A. 145, 35 Am. St. 27; *Board, etc.*, v. *Blacker*, 92 Mich. 638, 52 N. W. 951, 16 L. R. A. 432; *People, ex rel.*, v. *Canaday*, 73 N. C. 198, 21 Am. Rep. 465; *Baird* v. *Board, etc.*, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81; *Smith* v. *Board, etc.*, 148 N. Y. 187, 42 N. E. 592.

We entertain no doubt of the right of the relator to maintain this action. Every male inhabitant of the State, over the age of twenty-one years at the time the last preceding eunmeration of such inhabitants was taken, has a direct interest in the constitutional apportionment of senators and representatives throughout the State, and if, by an apportionment act, his rights in this respect are denied or impaired, he may obtain redress by proper action in the courts. It is not requisite to his right to sue that the wrong complained of should exist in his own senatorial or representative district. Over representation in other districts, or the denial of fair representation, is just as injurious to the political rights of any portion of the male inhabitants over twenty-one years of age, aggrieved thereby, as if these inequalities were found in their own district. *Hamilton* v. *State, ex rel.*, 3 Ind. 452; *Board, etc.*, v. *State, ex rel.*, 86 Ind. 8; *Parker* v. *State, ex rel.*, *supra; Denney* v. *State, ex rel.*, *supra; State* v. *Sovereign*, 17 Neb. 173, 22 N. W. 353; *State* v. *Brown*, 38 Ohio St. 344; *State, ex rel.*, v. *Tanzey*, 49 Ohio St. 656, 32 N. E. 750; *Landis* v. *Walls*, 160 Ind. 216.

It is perfectly clear that it was not necessary to make defendants to the action any other persons than the clerk,

sheriff, and auditor of the county in which the suit was brought. *Parker* v. *State, ex rel., supra; Denney* v. *State, ex rel., supra.*

The first general inquiry in this case is whether the General Assembly, by the act of March 9, 1903, did apportion the number of senators and representatives among the several counties according to the number of male inhabitants above twenty-one years of age in each, as shown by the enumeration taken in 1901. In the very nature of things, some inequalities were unavoidable, but are there others which might and should have been avoided? Are any of these deviations from the unit of representation so pronounced as to give to one or more districts a larger representation than they are entitled to have under the Constitution, or to deprive others of the full number of senators and representatives authorized by the number of male inhabitants above the age of twenty-one years within their bounds? The duty of the General Assembly, in making the apportionment, is plainly stated in the Constitution. Exact equality of representation according to the enumeration of all the inhabitants entitled to be represented is admitted to be unattainable. But this difficulty cannot excuse or render lawful an apportionment which widely and unnecessarily departs from the constitutional principles upon which every such distribution of senators and representatives should rest. An apportionment which gives, and is intended to give, to one political party or another a decided and unfair advantage in the election of members of the General Assembly, where such disparity can be avoided, must for that reason be condemned. In the consideration of such statutes, the courts can regard with no favor a law which designedly disfranchises any portion of the male inhabitants of the State over the age of twenty-one years, or deprives them of that fair proportion of representation which the Constitution declares they shall have.

The number of male inhabitants of the counties of

Brooks v. State, ex rel.

Switzerland, Ohio, Dearborn, and Franklin, over the age of twenty-one years, as shown by the enumeration of 1901, was 15,652, being 1,766 more than the senatorial unit of 13,886. The act of March 9, 1903, failed to apportion a senator to these counties, but the county of Union was added to make up a senatorial district, which then contained an excess of 3,889. An examination of the map of the counties of the State in connection with the enumeration made under the act of 1901 discloses that this inequality was not an unavoidable one, but that senatorial districts could readily have been formed of contiguous counties, which would have conformed much more closely to the rule of the Constitution.

It also appears that the county of Wayne was given a senator, although it lacked 2,599 inhabitants of the senatorial unit, and that the county of Union, which was contiguous to it, was attached to the counties of Switzerland, Ohio, Dearborn, and Franklin, which already contained more* than the unit.

Again, while the five counties of Switzerland, Ohio, Dearborn, Franklin, and Union, with 17,775 male inhabitants over the age of twenty-one years, are given one senator by the act of March 9, 1903, the counties of Lagrange and Noble with only 10,787 such inhabitants have one senator; Rush, Fayette, and Shelby counties, with 17,111 such inhabitants, have one senator, and Lake county, with 11,162 such inhabitants, has one also; Miami and Howard counties, with 16,009 such inhabitants, have but one senator, and Wayne county, with only 11,287 such inhabitants, has one; Jefferson, Jennings, and Ripley counties, with 15,831 such inhabitants, have one senator, and the county of Tippecanoe, with but 11,762 such inhabitants, also has one senator; Montgomery and Parke counties, with 15,829 such inhabitants, have one senator, and Lawrence and Monroe counties, with but 11,681 such inhabitants, also have one senator.

State, *ex rel.*, *v.* Board, etc.

It is not necessary that we should go farther. The inequalities in the apportionment which we have mentioned cannot be explained on the ground that they were inevitable, or defended upon the pretense that they were approximately just. These instances are sufficient to compel this court to declare that the act of March 9, 1903, does not conform to the requirements of the Constitution, and that it is void.

The court did not err in overruling the demurrer to the complaint, and its judgment is affirmed.