## STATE EX REL. SOUTH ST. PAUL AND OTHERS v. GEORGE HETHERINGTON AND OTHERS.[1]

November 13, 1953.

No. 36,051.

---

[1]Reported in 61 N. W. (2d) 737.

*Fallon Kelly,* for appellants city of South St. Paul and Elmer Culbertson.

*Sullivan, Stringer, Donnelly & Sharood,* for city of West St. Paul and John V. Sperl.

*R. C. Nelsen,* County Attorney, for respondents.

Matson, Justice.

Plaintiffs appeal from a judgment dismissing an order to show cause in the nature of an alternative writ of mandamus and sustaining the action of the county commissioners as to their manner of redistricting Dakota county, as required by M. S. A. 375.02, into districts composed of contiguous territory and containing as nearly as practicable an equal population.

The primary issue is whether proof of a gross disparity in the population of the various county commissioner districts in and of itself, without more, establishes that the board of commissioners has not complied with § 375.02 in redistricting the county. Secondary issues arise as to the requirements of contiguity of territory and as to the jurisdiction of the district court.

On June 10, 1952, pursuant to § 375.02, which requires a redistricting whenever one county commissioner district is found to contain 30 percent or more of the population of the county (according to the latest federal or state census), the defendant Board of Commissioners of Dakota County, Minnesota, redistricted the county. The plaintiffs do not contest the fact that redistricting was necessary, nor do they contest the validity of the procedures followed by the board in effecting the redistricting. The plaintiffs' only objection is to the results of the redistricting. Before redistricting, according to the 1950 federal census, the populations of the five commissioner districts were:

| | | |
|---|---|---|
| 1st District | 7,406 | or 15.07% |
| 2nd District | 16,576 | or 33.74% |
| 3rd District | 13,242 | or 26.96% |
| 4th District | 6,461 | or 13.15% |
| 5th District | 5,446 | or 11.08% |

After redistricting the populations were:

| | | |
|---|---|---|
| 1st District | 7,992 | or 16.27% |
| 2nd District | 13,653 | or 27.79% |
| 3rd District | 12,630 | or 25.71% |
| 4th District | 7,140 | or 14.53% |
| 5th District | 7,716 | or 15.70% |

A comparison of the figures shows that, although the redistricting effected a partial equalization and brought the 2nd District within the limit of 30 percent, comparatively little was done to erase the gross disparity between the population of that district and the respective populations of the 1st, 4th, and 5th Districts. As a result the 2nd and 3rd Districts with 53 percent of the total population are given two members on the board, whereas the 1st, 2nd, and 3rd with only 46 percent of the population are given three commissioners.

Plaintiffs commenced an action to have the redistricting resolution of the board declared null and void and to mandamus the board to redistrict in accordance with § 375.02. The court upon stipulated facts concluded that the board's redistricting action was not erroneous, arbitrary, unreasonable, unlawful, or contrary to law and that the districts as redistricted are composed of contiguous territory and contain as nearly as practicable an equal population. Plaintiffs' appeal is taken from the judgment dismissing what was in effect an alternative writ of mandamus.

■ Plaintiffs contend that the 3rd District, as redistricted, is not composed of contiguous territory—as required by § 375.02—because two municipalities within such district, namely, the city of West St. Paul and the village of Inver Grove are not contiguous to each other. There is no merit to this contention. Obviously a commissioner district may be composed of contiguous territory although two municipalities within its boundaries are separated from each other by intervening territory which also belongs to the district.

■ Although mandamus does not lie to control or interfere with the manner in which county commissioners exercise their discretion in discharging their statutory duty to redistrict their county, it does lie to set the exercise of that discretion into motion where the board fails to act or to obtain a new and bona fide exercise of discretion when it appears that the board has acted without discretion or in a clearly arbitrary and capricious manner.[2] The court

[2]Olson v. Honett, 133 Minn. 160, 157 N. W. 1092, 1103; State ex rel. Laurisch v. Pohl, 214 Minn. 221, 8 N. W. (2d) 227.

302

will be slow to exercise its jurisdiction to set aside the redistricting of a county where it appears that the board by any exercise of sound discretion has effected that reasonable approximation to equality which is required by the statutory command that the districts shall contain as nearly as practicable equal populations.[3] A judicial question arises, however, whenever an act of reapportionment is clearly and palpably tainted with an abuse of discretion.[4]

■ We come to the primary issue of whether proof of a gross disparity in the population of the commissioner districts in and of itself, without more, establishes that the board has abused its discretion and thereby failed to comply with § 375.02. In seeking to ascertain whether there has been an abuse of discretion it is of no significance that the redistricting has brought all districts below 30 percent of the county population as a whole. The legislature, in providing that when it appears after a state or federal census that 30 percent or more of a county's population resides in one district the county must be redistricted, did not indicate that anything less than such percentage figure necessarily constituted reasonable equality. The 30-percent figure merely designates the extreme limit beyond which inequalities in population can no longer be tolerated and require prompt corrective action. If it were otherwise the redistricting remedy provided by § 375.02 would become futile because its purpose could be defeated after each census merely by bringing the population of a district two or three percentage points below the 30-percent limit. No statute is to be given an absurd construction if the language thereof will reasonably bear any other construction. § 645.17(1).

■ Undoubtedly the board of commissioners in redistricting are vested with a broad discretion to effect as nearly as practicable an equal population for the various districts. Mathematical equality of course is not required. A well-established population trend may justify for the moment the award of a slightly greater representation

[3]See, Attorney General v. Suffolk County Apportionment Commrs. 224 Mass. 598, 113 N. E. 581.

[4]State ex rel. Meighen v. Weatherill, 125 Minn. 336, 147 N. W. 105; Brooks v. State ex rel. Singer, 162 Ind. 568, 70 N. E. 980.

to a district with a rapidly expanding population. Certain inequalities, not amounting to gross disparities, may be justified because of the complexities arising from the requirement that each district must be bounded by town, village, ward, or precinct lines. Clearly, however, the permissive use of ward and precinct lines obviates much of the difficulty in making a practical division of urban areas. It is also not to be overlooked that each redistricting problem is to be related to the time and conditions under which it takes place. It follows that as a result of modern roads, and other means of modern communication, sparsely settled areas no longer present the problem that once arose when it was difficult for the scattered inhabitants thereof to hold political communication with each other.

We do not have here, however, minor differences in the division of the county's population. Three districts have a population varying from 7,140 to 7,992, and two others have each nearly twice that population. Can it be said that the county commissioners have properly exercised their discretion in redistricting when a resident of one district, as measured by the effectiveness of his voting privilege, amounts to slightly more than half a citizen when compared to the resident of another district? The right to vote on a basis of reasonable equality with other citizens is a fundamental and personal right essential to the preservation of self-government. Fundamental rights may be lost by dilution as well as by outright denial. To whatever extent a citizen is disenfranchised by denying him reasonable equality of representation, to that extent he endures taxation without representation and the democratic process itself fails to register the full weight of his judgment as a citizen. The importance of the franchise right is recognized by the Bill of Rights in Minn. Const. art. 1, § 2, and the principle of equality of representation has been preserved with respect to the legislature (art. 4, § 2). Although we are now concerned only with a construction of a statute we cannot be unmindful of these fundamental principles when we are asked to approve the gross disparity in population reflected by the redistricting of Dakota county.

In the instant case defendants seek to justify the gross disparity in population under the authority of State ex rel. Meighen v. Weatherill, 125 Minn. 336, 147 N. W. 105, on the theory that this court therein approved equally gross inequalities with respect to the reapportionment act of 1913 for the redistricting of legislative districts for both houses of the legislature. In that case the contestants alleged that the apportionment act was unconstitutional as violating Minn. Const. art. 4, § 2, which provides that representation in both houses shall be apportioned equally throughout the different sections of the state in proportion to the population thereof. We do not agree with defendants' interpretation and application of the Weatherill case. Aside from the fact that the reapportionment act involved therein directly concerned one of the three independent branches of government and pertained to the practical difficulties arising in the redistricting of an entire state, we have the controlling distinction that this court found the resulting inequalities to be unavoidable. Apparently the contestants therein made no satisfactory showing that another redistricting plan would have been feasible in avoiding the inequalities. An examination of the briefs in the Weatherill case also discloses that to a certain extent the denial to a district of reasonably equal representation in one house was to some extent counterbalanced by an award of increased representation in the other house. Such counterbalancing of inequalities no doubt had some weight with the court. Whether, in view of the wording of Minn. Const. art 4, § 2, we would again approve a similar adjustment of population inequalities we need not here determine. In applying the Weatherill case it is enough to note that this court, before holding therein that the inequalities were unavoidable, pointed out that compliance with the constitutional provision, although not calling for perfect exactness in reapportionment, did require as close an approximation to exactness as possible and that this constituted the utmost limit for the exercise of legislative discretion.

It follows that in redistricting a county pursuant to the statutory requirement that the commissioner districts shall "con-

tain as nearly as practicable an equal population" (§ 375.02) a proper exercise by the county commissioners of their discretion requires a close approximation to equality and that unnecessary inequalities be avoided insofar as may be practicable under the existing circumstances. In passing upon the gross inequalities in the present case we cannot overlook the principle that public officers are presumed to have done their duty and acted within the limits of their statutory powers and that the burden to overcome the presumption rests with the party contending to the contrary.[5] In the light of this presumption we cannot say that the gross disparity in the population of the county commissioner districts in and of itself, *without a showing that such gross disparity was avoidable,* establishes that the board of commissioners failed to exercise a proper discretion in compliance with the provisions of § 375.02. Here the fact that a gross disparity in population existed was established by stipulation, but there was no showing that such disparity was avoidable. The burden of proof to show a failure of the commissioners to exercise a proper discretion in redistricting the county rested upon the plaintiffs, and such burden of proof included a showing that the resulting disparity in population was avoidable. Although the stipulated facts sustain the trial court's findings, there is such a gross disparity in population that this court, in the interest of justice, remands the case to the trial court for the vacation of the judgment and the taking of additional evidence as a basis for an additional finding of whether the gross inequalities in population were unavoidable.

Remanded with directions.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On December 24, 1953, the following opinion was filed:

PER CURIAM.

Defendants appeal from clerk's taxation of costs.

[5]In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 42 N. W. (2d) 393; Ingelson v. Olson, 199 Minn. 422, 272 N. W. 270, 110 A. L. R. 167; 7 Dunnell, Dig. (3 ed.) § 3435, and cases therein cited.

M. S. A. 607.01 gives this court no discretion in any case in the allowance or disallowance of *necessary* disbursements. If a party has *prevailed,* he cannot be denied the disbursements which he has *necessarily* paid or incurred. Collins v. Collins, 221 Minn. 343, 22 N. W. (2d) 168, 23 N. W. (2d) 9.

It is not contended here that plaintiffs' disbursements were not necessary. Defendants assert, however, that plaintiffs are not *prevailing* parties. We hold to the contrary. When plaintiffs obtained a vacation of the judgment for the purpose of remanding the case to the trial court for the taking of additional evidence as a basis for an additional finding on the avoidability of the gross inequalities in population, they thereby obtained the equivalent of a new trial with respect to a vital issue which had not theretofore been litigated. Clearly plaintiffs prevailed, although the relief afforded them was not in the particular form which they had sought or expected. An appellant who obtains the equivalent of a new trial upon a vital issue is unquestionably entitled to his disbursements under § 607.01. See, Propper v. C. R. I. & P. R. Co. 237 Minn. 386, 54 N. W. (2d) 840.

Defendants further assert, however, that the clerk's award to plaintiffs of their necessary disbursements, even though they be prevailing parties, is erroneous because there is no judgment in the supreme court upon which a taxation of costs may properly be made. This position is without merit. This case is no different in principle from one in which this court reverses a judgment of the trial court and grants a new trial upon one or more of the basic issues. Cf. Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793. A judgment, whether it is reversed or vacated, ceases to exist; but such termination of its existence has no bearing upon the prevailing party's right to the allowance of his necessary disbursements.

Section 607.01 does, however, vest this court with discretion in the allowance of statutory costs in an amount not to exceed $25. Trinity Church v. First Spiritualist Church, 221 Minn. 15, 20 N. W. (2d) 534, 21 N. W. (2d) 611. Plaintiffs will be denied their statutory costs for the reason that they made no effort in the court

below to present evidence on the issue of the avoidability of the gross inequalities in population.

With the exception of the item of $25 statutory costs, the clerk's taxation is affirmed.

Affirmed.

