Hilary ZIOLS, Petitioner, Respondent,

v.

**RICE COUNTY BOARD OF COMMISSIONERS,**
Appellant.

No. C3–02–1667.

Court of Appeals of Minnesota.

May 20, 2003.

Philip M. Zrimsek, Northfield, for respondent.

G. Paul Beaumaster, Rice County Attorney, Rice County Courthouse, Faribault, for appellant.

Considered and decided by MINGE, Presiding Judge, HUDSON, Judge, and FORSBERG, Judge.*

## OPINION

HUDSON, Judge.

This is an appeal from a writ of mandamus and denial of a motion for a new trial in which the district court ordered the county board of commissioners to reconsider its redistricting plan and to adopt a plan that complies with statutory and constitutional mandates. Appellant board contends (a) the district court erred as a matter of law in its redistricting decision and (b) because the district court had already ordered the county board to proceed using the challenged plan for the 2002 elections, it no longer had jurisdiction over the mandamus petition. We affirm, holding that (a) the district court acted properly because there was a showing that the board failed to consider the statutorily required equal population principle in choosing a redistricting plan; and (b) the district court retained jurisdiction to consider the redistricting challenge as applied to future elections after ordering the 2002 election to take place pursuant to the challenged plan.

## FACTS

After the 2000 census, the Rice County Board of Commissioners addressed whether it should redistrict its commissioner districts. It asserted that it was not compelled to do so because its districts were in compliance with the statutory requirements for maximum population deviation. But it determined redistricting was nonetheless necessary because one of its cities had changed its precinct boundaries, requiring an adjustment in the district boundaries.

The board gave the required public notice and held hearings. It was presented with 13 proposed plans, all of which divided Rice County, which has a population of 56,665, into five districts. If the five districts had equal populations they would each contain 11,333 people, but all of the plans deviated more or less from this ideal.

The board initially set out the various factors it would consider in making the redistricting decision, including contiguity, compactness, equal population, community of interest, and socio-economic concerns. In later discussions, several commissioners

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

expressed their belief that because all of the proposed plans fell within the statutory requirement that "[n]o district shall vary in population more than ten percent from the average for all districts in the county," Minn.Stat. § 375.025, subd. 1 (2002), the equality of population factor had been met and did not need to be considered further. Another commissioner asserted that equality of population must nonetheless be considered.

The board focused primarily on two plans: the "Plaisance" plan, which was ultimately adopted, and the "Robins I" plan.

The Plaisance plan was as follows:

|  | Population | Deviation from Ideal Population | Percentage of Deviation from Ideal |
|---|---|---|---|
| District 1 | 10,517 | − 816 | − 7.2% |
| District 2 | 12,370 | + 1037 | + 9.2% |
| District 3 | 10,552 | − 781 | − 6.9% |
| District 4 | 11,887 | + 554 | + 4.9% |
| District 5 | 11,339 | + 6 | 0.0% |

The Robins I plan provided:

|  | Population | Deviation from Ideal Population | Percentage of Deviation from Ideal |
|---|---|---|---|
| District 1 | 11,059 | − 274 | − 2.4% |
| District 2 | 11,353 | + 20 | + 0.2% |
| District 3 | 11,411 | + 78 | + 0.7% |
| District 4 | 11,325 | − 8 | 0.0% |
| District 5 | 11,517 | + 184 | + 1.6% |

On May 28, 2002, the board adopted the Plaisance redistricting plan, by a three-to-two vote. While the resolution listed the various factors considered, it did not include the equal population factor.

Respondent Hillary Ziols, a registered voter in Rice County, filed a petition for an alternative writ of mandamus in district court under Minn.Stat. § 375.025, subd. 2 (2000), challenging the redistricting plan. The district court issued the alternative writ, and a hearing was held. Because the date for candidates to file for office for the 2002 elections was less than a month away, the district court ordered the board to execute the Plaisance plan for the 2002 election year, but retained jurisdiction to consider the merits of the petition later.

On August 1, 2002, the district court concluded that the board had not been sufficiently diligent in performing its redistricting duties and did not focus on the population equality principle as required by both statutory and constitutional law. The court ordered the county board to convene to reconsider the redistricting plan it adopted and, by October 1, 2002, adopt a redistricting plan that complies with statutory and constitutional mandates. Appellant moved for a new trial, which the district court denied, noting that Ziols had met her burden of showing that the board failed to exercise proper discretion in applying the statute and had failed to justify its choice. Similarly, the district court rejected the board's jurisdictional challenge, stating that it had specifically reserved the issue for consideration at a later date because of time constraints. This appeal followed.

## ISSUES

I. Did the county board, in choosing a redistricting plan, abuse its discretion by failing to consider the equality of population standard under Minn.Stat. § 375.025, subd. 1 (2002), even though the plan met the statutory requirement that none of the districts deviate from the average population of the districts by more than 10%?

II. Did the district court retain jurisdiction over the mandamus petition after it ordered the board to use the challenged redistricting plan for the 2002 elections?

## ANALYSIS

### I

■ An appellate court will conduct a de novo review of a writ of mandamus. *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989).

■ We first review the standards for mandamus. "[M]andamus is an extraordi-

nary legal remedy granted on equitable principles" that may be granted only in the absence of any other adequate remedy at law. *Id.* (citations omitted). It may issue to compel any inferior tribunal, including a board, to perform "an act which the law specifically enjoins as a duty." Minn.Stat. § 586.01 (2002). It may also issue to require the inferior tribunal "to exercise its judgment or proceed to the discharge of any of its functions." *Id.* But it cannot direct the manner in which such discretion may be exercised. *Id.*

In a redistricting case, mandamus cannot "control or interfere with the manner in which county commissioners exercise their discretion." *State ex rel S. St. Paul v. Hetherington,* 240 Minn. 298, 301, 61 N.W.2d 737, 740 (1953) (citation omitted).

> [I]t does lie to set the exercise of that discretion into motion where the board fails to act, or to obtain a new and bona fide exercise of discretion when it appears that the board has acted without discretion or in a clearly arbitrary and capricious manner.

*Id.* at 301, 61 N.W.2d at 740 (citation omitted). Whether a decision on mandamus was unreasonable or arbitrary "is determined by reference to the [relevant] standards." *Rockville Township v. Lang,* 387 N.W.2d 200, 203 (Minn.App.1986) (reviewing denial of issuance of a conditional use permit under the local zoning ordinance).

We next examine the law governing redistricting. Rice County has five commissioners on its county board and five commissioner districts. Minn.Stat. §§ 375.01, 375.025, subd. 1 (2002). After the federal census, a county board may choose to redistrict the county, but it must do so if it appears that the commissioner boundaries are no longer in accord with the statutory standards. Minn.Stat. § 375.025, subd. 1. Before redistricting, the board must first give public notice and then consider the matter at a hearing. *Id.* After the board chooses a redistricting plan, "[a]ny qualified voter may apply to the district court of the county for a writ of mandamus * * * to revise the redistricting plan." Minn.Stat. § 375.025, subd. 2 (2002). After a hearing, the court may give the county board additional time to redistrict or to correct errors in the plan. *Id.* If the court determines that the board has not been sufficiently diligent in performing its redistricting duties, the court may appoint a redistricting board. *Id.*

Both constitutional and statutory standards govern redistricting. As an underlying principle, "all qualified voters have a constitutionally protected right to vote." *Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964) (citation omitted). "[T]he right to vote in an election is protected by the United States Constitution against dilution or debasement." *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.,* 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970). Under the Equal Protection Clause of the Fourteenth Amendment, when there are state or local elections, "each qualified voter must be given an equal opportunity to participate in that election." *Id.* at 56, 90 S.Ct. at 795; *Hanlon v. Towey,* 274 Minn. 187, 196, 142 N.W.2d 741, 746 (1966) (holding equal population principle in equal protection clause applies to county government). Further,

> when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionately equal numbers of officials.

*Hadley,* 397 U.S. at 56, 90 S.Ct. at 795.

We next examine the statutory standards for redistricting. Minn.Stat. § 375.025, subd. 1. The statute provides:

[1] Commissioner districts shall be bounded by town, municipal, ward, or precinct lines.

[2] Each district shall be composed of contiguous territory as regular and compact in form as practicable, depending upon the geography of the county involved and *shall be as nearly equal in population as possible.*

[3] *No district shall vary in population more than ten percent from the average for all districts in the county,* unless the result forces a voting precinct to be split.

[4] A majority of the least populous districts shall contain not less than a majority of the population of the county.

*Id.* (emphasis added).

In *Hetherington,* the Minnesota Supreme Court addressed a redistricting question similar to the one raised here. 240 Minn. at 300, 61 N.W.2d at 739. Under the statute in effect at that time, no commissioner district could be greater than 30% of the county population. *Id.* Although redistricting brought the districts within this percentage, the districts still had a gross disparity in population, with two districts having nearly twice the population of other districts. *Id.* at 301, 61 N.W.2d at 740. In addressing the redistricting challenge, the court held under the statute that

> in redistricting a county pursuant to the statutory requirement that the commissioner districts shall "contain as nearly as practicable an equal population," § 375.02, a proper exercise by the county commissioners of their discretion requires a close approximation to equality and that unnecessary inequalities be avoided insofar as may be practicable under the existing circumstances.

*Id.* at 305, 61 N.W.2d at 742. The court found that there was such a gross disparity in population that it ordered the district

court to take additional evidence to determine whether the gross inequalities in population were avoidable. *Id.*

■ Similarly, the district court here held that the county board did not exceed the statutory maximum in adopting the Plaisance plan. Nonetheless, the court ruled that where the board did not indicate what importance, if any, the board placed on the equal population principle and did not cite any statutory provisions preventing it from choosing one of the other plans, it did not necessarily meet the statutory and constitutional requirement that each district be as nearly equal in population as possible.

We now address the maximum statutory deviation allowed under the statute, Minn. Stat. § 375.025, subd. 1. As the district court found, the Plaisance plan, as well as all of the other 12 proposed plans, met the requirement that the population of the districts may vary no more than 10% from the average of all districts. *See id.* The most that a district in the Plaisance plan deviated from the average was by 1,037 people or 9.2%. The question raised here is whether a plan whose district population varies no more than 10% from the average also meets the requirement that each district "shall be as nearly equal in population as possible," or whether equal population is a separate factor that must also be explicitly considered by the board. *See, e.g., id.*

The county board asserts that the 10% deviation from the average is valid under the statute and that it otherwise exercised its discretion properly in considering the various factors. It contends that the population deviation in the plan was a minor one that does not require justification, contrary to the district court's ruling. Further, it argues that the district court improperly applied a strict scrutiny standard.

It asserts that the standard instead is whether the county board abused its discretion. It contends that where there was neither a finding that it abused its discretion, nor any evidence that would support such a finding, the district court's decision must be vacated and the mandamus action dismissed.

We cannot agree. The statute declares that no district shall vary more than 10% from the average population of all of the districts, unless this would result in a precinct being split. Minn.Stat. § 375.025, subd. 1. This does not, however, mean that all population variations less than this 10% are acceptable. *See Hetherington,* 240 Minn. at 305, 61 N.W.2d at 742 (holding that, although statutory maximum population deviation was met, case remanded for consideration of whether gross disparity in population was unavoidable in light of the equal population principle). Indeed, the 10% statutory limit and the equal population provision are separate factors in the statute. Minn.Stat. § 375.025, subd. 1. Further, the statute provides that the board "shall" consider equal population. *Id.; see* Minn.Stat. § 645.44, subd. 16 (2002) (stating that " 'shall' is mandatory"). Even though the approved Plaisance plan did not exceed the 10% maximum deviation, it still had to meet the equal population factor.

The equal population requirement in the statute has a powerful legal basis; it is ultimately based on the right to vote, which is protected under the constitution "against dilution or debasement." *Hadley,* 397 U.S. at 54, 90 S.Ct. at 794. If one district is overrepresented while another is underrepresented, the votes of the citizens are not given the same weight. While some variation is permissible to take into account other factors important in the state, there is no doubt that the county must show that it at least considered the equal population factor. Minn.Stat. § 375.025, subd. 1. We acknowledge that respondent does not argue that the dilution claim is based on a suspect class. *Cf. Gaffney v. Cummings,* 412 U.S. 735, 751, 93 S.Ct. 2321, 2330, 37 L.Ed.2d 298 (1973) (noting that, even if a plan is acceptable under equal population standards, it may be invidiously discriminatory if used "to minimize or cancel out the voting strength of racial or political elements" (citations omitted)). But failure to consider equal population could nevertheless implicate the constitutional protection against dilution of votes. *Hadley,* 397 U.S. at 54, 90 S.Ct. at 794.

While we do not reach the constitutional limits of redistricting, we note that, under federal constitutional law, a deviation under 10%, as measured by the absolute difference between the most underrepresented and the most overrepresented districts in county government, is considered minor and does not raise constitutional concerns. *Voinovich v. Quilter,* 507 U.S. 146, 161, 113 S.Ct. 1149, 1159, 122 L.Ed.2d 500 (1993) (citing *Brown v. Thomson,* 462 U.S. 835, 842–43, 103 S.Ct. 2690, 2696, 77 L.Ed.2d 214 (1983)).[1] A plan with a maximum population deviation greater than 10%, however, may run afoul of constitutional protections and requires justification by the state. *Brown,* 462 U.S. at 843, 103 S.Ct. at 2696. Applying this calculation to the Plaisance plan, the most underrepresented district deviates 7.2% and the most overrepresented district deviates 9.2%, for a total population deviation of 16.4%. While

---

**1.** We note that this allowable constitutional deviation is calculated differently than the allowable statutory variation; the latter permits a maximum statutory variation in population no "more than ten percent from the average for all districts." Minn.Stat. § 375.025, subd. 1. Under the Plaisance plan, the greatest statutory variation is 9.2%.

this deviation in the Plaisance plan would raise constitutional concerns, under our disposition of this case, which relies on the equal population principle in Minn.Stat. § 375.025, subd. 1, we need not reach the constitutional question.

The board here explicitly specified factors that it addressed, including that the districts be as contiguous as possible; that they be as regular and compact as practical, considering the geography of the county; that the board attempted to balance the social economic status of the districts; and that the board attempted to take into account communities of interest. But as the district court pointed out, it did not explicitly mention the most important factor, population equality. Further, the board did not provide any specifics that would explain why the Plaisance plan, rather than one of the other 12 that had much lower deviations, was justified in light of this imbalance.

We next address the board's contention that the district court failed to find that it acted arbitrarily or capriciously or that it showed a clear abuse of discretion. Under the statute, the court may order the county to redistrict or correct errors in the plan; if it determines that the board was not "sufficiently diligent," it may appoint a redistricting board to redistrict in the board's stead. Minn.Stat. § 375.025, subd. 2. While the district court here did not find it necessary to go so far as to appoint another body to perform the board's redistricting duties, it found that the board failed to exercise sufficient diligence and was authorized by statute to order the board to reconsider its redistricting. *Id.* Further, the board's apparent failure to consider equality of population—a factor that the statute mandates the board to consider—constitutes an abuse of discretion. *Hetherington,* 240 Minn. at 301–02, 61 N.W.2d at 740.

While the district court could have been more explicit as to the abuse of discretion in its original order, in its order denying the motion for a new trial it specifically referred to the board's abuse of discretion. In any event, the court made it clear that based on the board's failure to issue findings as to its reason for selecting the Plaisance plan over the other plans, failure to cite any statutory deficiencies in the other plans submitted, and failure to state why its selection of the Plaisance plan—which had higher population variances—was unavoidable, the board abused its discretion. *See, e.g., Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977) (stating reviewing court will not reverse for district court's failure to explain its findings).

In conclusion, while the board was not required to pick the plan with the lowest population deviation from the ideal, it must explicitly address all of the statutory factors, particularly equal population. The district court's decision and its ultimate remedy are affirmed.

## II

■■■ Next, the board contends that the district court was divested of jurisdiction to consider the validity of the plan after it ordered the 2002 elections to proceed pursuant to the Plaisance plan. It argues that Ziols had a legal remedy to assert her claim of vote dilution by the plan—an action for violation of civil rights or the voting rights act of 1965. *See, e.g., Reynolds,* 377 U.S. at 537, 84 S.Ct. at 1369 (bringing civil rights action for violation of civil rights in reapportionment case). When a party has an adequate remedy at law, mandamus may not be invoked. Minn.Stat. § 586.02 (providing that writ of mandamus will issue only in absence of "adequate remedy in the ordinary course of law"); *McIntosh,* 441 N.W.2d at 118.

We find no merit in the board's claim. First, the court explicitly reserved the issue for reconsideration later. In any event, Ziols's petition challenging the redistricting under Minn.Stat. § 375.025, subd. 2, as to the proper commissioner districts for the elections remaining before the next federal census were still at issue and the district court clearly had jurisdiction to address the issue.

## DECISION

The district court retained jurisdiction over the redistricting challenge in the mandamus action, and the writ of mandamus by the district court ordering the county board to reconsider its redistricting decision in accordance with statutory and constitutional requisites is affirmed.

**Affirmed.**