Joanne **FAY**, petitioner, Respondent,

v.

**ST. LOUIS COUNTY BOARD OF COMMISSIONERS,**
Appellant.

No. A03–1443.

Court of Appeals of Minnesota.

Feb. 10, 2004.

Kenneth D. Butler, Duluth, for respondent.

Alan L. Mitchell, St. Louis County Attorney, Shaun R. Floerke, Amy H. Kuronen, Assistant County Attorneys, Duluth, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; and STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from the district court's invalidation of the county board's redistricting plan and subsequent appointment of a redistricting commission, appellant county board argues that a redistricting plan with a ten-percent-or-less-population deviation among districts is prima facie valid and may be implemented with no justification by the board. Because we find no error in the district court's findings and conclu-sion that the board failed to satisfy the standards of the Minnesota county-redistricting statute, we affirm the court's determination that the plan is invalid and a redistricting commission was required.

## FACTS

Appellant St. Louis County Board of Commissioners (the board) is composed of seven commissioners, each representing one district. Respondent Joanne Fay is one of those commissioners. After the 2000 Federal Census showed a St. Louis County population of 200,528, the parties agreed that redistricting was necessary.

The board considered several proposed redistricting schemes. Pursuant to published notice, a public hearing was held on May 21, 2002. At the public hearing, the county auditor submitted three plans and a commissioner submitted two alternatives. The board then discussed the plans and referred three plans, Plan A, Alternate 1, and Alternate 2, to the next board meeting for final resolution. The minutes reflect that on May 28, the board, the auditor, and a resident addressed the plans. After motions to adopt Plan A failed and Alternate 2 died without support, Alternate 1 was adopted with two dissenters, Commissioners Fink and Fay.

On June 4, Commissioner Fay petitioned for a writ of mandamus. She claimed that adoption of Alternate 1 "was effected by the [board] without applying or adhering to the standards and criteria set forth in Minn.Stat. § 375.025, subd. 1," specifically that (1) the population deviation exceeded ten percent and (2) the districts were not "as nearly equal in population as possible."

On July 1, the district court determined that the plan adopted at the May 28 meeting violated Minn.Stat. § 375.025 and the Minnesota and United States Constitutions. The court "respectfully command-

ed" that the board adopt a plan in compliance with the statute and the constitutions. Specifically, the court ordered that the plan was null and void and that the board must comply with the requirement that the districts "be as nearly equal in population as possible and vary in population no more than 10 percent from the average population for all such districts in the County." The court set out the proper computation to determine compliance.

After the board heard the county attorney explain the court's July 1 order, they moved the redistricting matter to a later meeting. The board reconvened on July 8. The county attorney detailed redistricting plans that would fall within the "ten percent deviation deemed acceptable by the court." After a motion to approve Alternate 2 failed, two commissioners successfully moved to adopt a new alternate, Plan XI. The minutes of the meeting conclude with: "Commissioner Fay insisted the redistricting deviation could be closer than the 8.12% included in Plan XI. After further discussion, the plan was approved. (6–1, Commissioner Fay voting nay)."

The board then moved the district court to reconsider the court's issuance of the writ. It argued that the court had exceeded its powers by declaring the plan null and void. The board also filed with the court its resolution adopting Plan XI, a copy of Plan XI, and an error-check report showing the percent deviations for each district.

Commissioner Fay submitted an affidavit on July 17, stating that Plan XI "does not advance the spirit and intent of [the] Court's Order filed July 1, 2002 in that it does not create revised districts as nearly equal in population as possible required by Minn.Stat. § 375.025, subd. 1." She stated that the total percent deviation of the districts from absolute parity was 8.26%, which was supported by the error-check report, but noted that two districts had much smaller population shifts than the others. She proposed her own plan with a total percent deviation of 1.6%. She argued that Plan XI also did not meet the one-person, one-vote precept. She noted several concerns raised by commissioners that were not addressed in Plan XI but were addressed in her plan. Finally, she argued that Plan XI was never published in the paper and no public hearing was held for consideration of Plan XI.

On July 24, the district court issued an order stating that "XI facially complies with the ten percent de minimus population deviation standard of Minn.Stat. § 375.025." In a separate order, the court denied the board's motion to reconsider the writ of mandamus, having found there was no compelling reason to do so.

One year later, on August 4, 2003, the district court heard Commissioner Fay's challenge to Plan XI. On September 3, the district court concluded that the board had abused its discretion in its adoption of Plan XI. The court also appointed a redistricting commission to devise a new redistricting plan.

After the board filed its notice of appeal, it sought accelerated review by the supreme court, which was denied on November 18. This court denied a motion to stay the work of the redistricting commission. The redistricting commission then filed its own redistricting plan with the district court, which certified the plan on December 22, 2003. A subsequent motion to stay implementation of the commission's plan was also denied by this court.

## ISSUES

I. Did the district court err in requiring the board to provide justification for its choice of plan where the percent deviation of the adopted plan conformed with the

federal constitutional de minimus standard?

II. Did the district court correctly determine that the board's adoption of Plan XI did not satisfy Minn.Stat. § 375.025 (2002)?

## ANALYSIS

■ An appellate court will conduct a de novo review of a writ of mandamus. *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989).

## I.

■ The St. Louis County Board of Commissioners contends that the only question before the district court was whether the board's redistricting plan met the federal constitutional standard for population deviation among districts. Under that standard, if the population deviation among the districts was less than ten percent, the board need not justify the plan unless the respondent proved invidious discrimination. No one disputes that Plan XI has a population deviation less than ten percent and no one alleges invidious discrimination. Therefore, the board argues, the plan was valid and should have been implemented.

■ Unlike the board, Commissioner Fay and the district court proceeded to analyze the plan and its adoption under Minn.Stat. § 375.025. Under that statute, a county redistricting plan must establish districts that meet certain "standards," not just pass a ten-percent-population-deviation standard. Under the recent decision *Ziols v. Rice County Bd. of Comm'rs*, 661 N.W.2d 283 (Minn.App.2003), Commissioner Fay argues, the board must show that it has separately considered the equal-population factor and the population-deviation standard, and must provide an explicit explanation for its choice of redistricting plan.

The board argues that this court would disregard decades of United States Supreme Court precedent if it were to apply the Minnesota statute instead of the federal ten percent standard. We conclude that the state statute conforms with federal law and must be applied to county redistricting plans.

■ It is clear that our state statute is rooted in the same constitutional principle that gives rise to federal caselaw. The one-person, one-vote principle is grounded in the Equal Protection Clause, *Reynolds v. Sims*, 377 U.S. 533, 560–61, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964), and applies to state and local elections. *Abate v. Mundt*, 403 U.S. 182, 185, 91 S.Ct. 1904, 1906, 29 L.Ed.2d 399 (1971); *Hanlon v. Towey*, 274 Minn. 187, 196, 142 N.W.2d 741, 746 (1966) (holding that equality-of-voting-rights principle embodied in Equal Protection Clause of federal constitution applies to county governments). The state statute is "ultimately based on the right to vote, which is protected under the constitution 'against dilution or debasement.'" *Ziols*, 661 N.W.2d at 288 (citing *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970)).

■ Decisions of the United States Supreme Court indicate that a state statutory plan for county redistricting deserves deference as long as the statute protects voters' constitutional rights. "That the Equal Protection Clause requires that [apportionment] ... be ... on a population basis does not mean that States cannot adopt some reasonable plan for periodic revision of their apportionment schemes." *Reynolds*, 377 U.S. at 583, 84 S.Ct. at 1392. When a state accepts responsibility for redistricting, "its decisions as to the most effective reconciling of traditional policies should not be restricted beyond the com-

mands of the Equal Protection Clause." *Wise v. Lipscomb*, 434 U.S. 1329, 1331–32, 98 S.Ct. 15, 17, 54 L.Ed.2d 41 (1977). "With respect to the operation of the Equal Protection Clause, it makes no difference whether a State's apportionment scheme is embodied in its constitutional or in statutory provisions." *Reynolds*, 377 U.S. at 584, 84 S.Ct. at 1393.

The Minnesota legislature's standards for redistricting counties are set out in Minn.Stat. § 375.025, subd. 1 (2002). The redistricting standards mandate that each district shall be:

1. bounded by town, municipal, ward, or precinct lines,

2. composed of contiguous territory,

3. as regular and compact in form as practicable, depending upon the geography,

4. as nearly equal in population as possible, and

5. not varying in population more than ten percent from the average for all districts in the county.

Minn.Stat. § 375.025, subd. 1. These standards, requiring that the districts be "as nearly equal in population as possible," extend beyond the population-deviation standard under federal constitutional law to ensure greater compliance with the one-person, one-vote principle in redistricting. Requiring districts to be "as nearly equal in population as possible" is a different and separate factor from population deviation when devising a redistricting plan. *Ziols*, 661 N.W.2d at 288.

While federal constitutional law is properly applied to challenge a state law as limiting a person's fundamental rights, it does not follow that it applies to supersede a state law that conforms with the voting-rights protections recognized by the United States Supreme Court. Here, no one alleges that the state statute provides less protection of the one-person, one-vote principle than federal law. Therefore, the district court correctly analyzed Plan XI under the state statutory standards.

## II.

A reviewing court "will be slow to exercise its jurisdiction to set aside the redistricting of a county where it appears that the board by any exercise of sound discretion has effected that reasonable approximation to equality which is required by the statutory command that the districts shall contain as nearly as practicable equal populations." *State ex. rel. So. St. Paul v. Hetherington*, 240 Minn. 298, 302, 61 N.W.2d 737, 741 (1953). Furthermore, the board is presumed to have done its duty and acted within the limits of its statutory powers, and the burden to show otherwise is on the party contending to the contrary. *Id.* at 305, 61 N.W.2d at 742.

The district court found that the board's adoption of Plan XI was not sufficiently diligent and was an abuse of discretion under Minn.Stat. § 375.025. It determined, as did the district court in *Ziols*, that the board did not provide any specifics that would explain why it chose a plan with a greater population deviation than others before the board. While the *Ziols* court clarified that the board "was not required to pick the plan with the lowest population deviation from the ideal, it must explicitly address all of the statutory factors, particularly equal population" to justify its choice. *Ziols*, 661 N.W.2d at 289. If the record before the district court does not establish that each proposed plan was analyzed but rejected due to the overall superiority of the chosen plan, there is no basis to conclude the board complied with statutory standards. Here, the board resolution included a statement that the board had considered the one-person, one-vote principle, but there was nothing in the

record to show that the commissioners had evaluated the population-equality issue.

■ The district court properly appointed a redistricting commission due to this deficiency in Plan XI. Because the board failed to brief the issue of proper notice in the implementation of Plan XI and Commissioner Fay subsequently withdrew her notice of review, this court declines to reach the issue. *See State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn.1997) (declining to reach issue not adequately briefed).

## DECISION

The district court order declaring Plan XI to be null and void and appointing a redistricting commission was correctly determined by application of the state's county-redistricting statute. The court did not err in its conclusion that the board had not articulated its basis for choosing Plan XI over other proffered plans that provided for districts that were more nearly equal in population than the districts in Plan XI.

**Affirmed.**