O’CONNELL, Justice.
This cause is before us on an alternative writ of mandamus issued by this Court to the respondent, H. G. Cochran, as Director of the Beverage Department of the State of Florida, on petition of the Village of North Palm Beach, an incorporated municipality. The respondent has filed an answer and motion to quash and we have heard argument of the parties.
The alternative writ of mandamus directed the respondent beverage director to rescind and cancel the transfer of a liquor license from a location in the non-municipal area of Palm Beach County to a location inside the boundaries of the relator municipality, or show cause why he should not do so.
The following facts are essential to an understanding of this case.
The relator municipality was created by special act of the legislature in 1956. Although its population is not ascertainable from the 1950 statewide census, the parties agree that its present population is less than 1,251.
The beverage license involved in this controversy was initially issued in 1946 to one Glennon for use in Palm Beach County outside the limits of any municipality. It authorized consumption on the premises. On December 3, 1958, the respondent beverage director approved' a transfer of the license from its previous *3 non-municipal location to a location within the limits of the relator municipality and from Glennon to one Burbank, who is ami-cus curiae in this cause. The transferee Burbank was denied a city license by the relator, but was issued a renewal of the state and county license by the Tax Collector of Palm Beach County.
There is no question of zoning, hours of sale, or sanitary or health conditions involved herein, nor does it appear that there is involved any violation of any municipal ordinance.
On these facts the relator municipality states the question to be that:
“Florida Statute 561.20(1) makes it unlawful for the beverage director to issue or transfer a liquor license into a municipality with less than 1251 population.”
In support of its question the relator argues that the clear intent of § 561.20(1), F.S.A., is that there should be no new liquor license issued nor any existing license transferred into the limits of a municipality having less than 1,251 population.
The subject section of the statute reads as follows:
“(1) No license under § 561.34(3)-(8) inclusive, shall be issued so that the number of such licenses within the limits of any incorporated municipality or in the territory of any county lying outside of such municipalities therein shall exceed one such license to each twenty-five hundred residents, or major fraction thereof, within such municipality or within such county outside of the limits of such municipalities as shown by the last regular statewide census, either federal or state, of such county or municipality; provided, however, that such limitation shall not prohibit the issuance of at least three licenses in any county that may approve the sale of intoxicating liquors in such county.” Sec. 561.20(1), Fla. Stats.1957, F.S.A.
Relator points out that prior to its amendment in 1955 the subject statute provided that the limitation on licenses by population “ * * * shall in no event be such as to prohibit the issuance of at least two such licenses in any such cities or towns * Relator contends that the deletion of this provision by the 1955 legislature shows an intent to prohibit the issuing of a liquor license in a municipality with less than 1,251 population.
To us the subject statute seems clear.
The principal purpose and effect of the statute is to regulate the sale of liquor in wet counties by limiting the number of licenses to he issued therein.
The number of licenses to be issued is determined by population and for the purpose of applying the formula the county is divided into units, each incorporated municipality forming a unit and the whole of the non-incorporated area of the county forming a unit.
By the formula prescribed in the statute “No license * * * shall be issued so that the number of such licenses * * * shall exceed one such license to each twenty-five hundred residents, or major fraction thereof * * * ” in each unit, municipal or non-municipal, except that there shall be at least three licenses issued in any wet county.
In effect this means that the first license may be issued when the population of a municipality reaches 1,251, and that for each additional 2,500 population in excess of 1,251 an additional license may issue.
The statute does not specifically state that no license shall be issued in a municipality of less than 1,251 population, i. e. a major fraction of 2,500, but it clearly provides that the number of licenses issued shall not exceed one license to each 2,500 population or major fraction thereof.
According to Webster’s New International Dictionary, 2d Ed., the word “exceed” *4 means “to go or be beyond a limit or measure.” The limit or measure by which the first liquor license is to be issued is a major fraction of 2,500 population, i. e. 1251.
' Unless it can be said that the limit or measure aforesaid was not intended to be applied to the first license to be issued, the issuance of one license in a municipality having less than 1,251 population is viola-tive of the limitation in the subject statute.
We are unable to find any basis upon which we can read into the statute an implied authorization for the issuance of one license in such a municipality. To do so would usurp the power of the legislature and would completely change the meaning of the limitation of one license for each 2,500 population or major fraction thereof. To do so we would have to say that the legislature did not mean “major fraction” but rather meant any fraction of 2,500 population insofar as the issuance of the first license is concerned.
‘‘"Á statute very similar to the one involved here was construed as we have construed this one in the case of Mayberry v. Duncan, 1949, 68 Ariz. 281, 205 P.2d 364. Also see State ex rel. Ferguson v. Board of Com’rs, 1913, 179 Ind. 513, 101 N.E. 813 and Benjamin v. Daneker, 1947, 73 R.I. 117, 53 A.2d 758.
As above mentioned, the subject statute was amended by the legislature in 1955. The sole effect of the amendment was to remove from the statute the guarantee of the issuance of a minimum of two licenses in each municipality irrespective of population. The legislature left intact the proviso guaranteeing a minimum of three licenses in each wet county.
We must agree with relator that the action of the legislature in making the 1955 amendment is a clear indication that it did not intend that a license be issued within a municipality unless it be authorized on a basis of the population formula prescribed in the statute.
Had the. legislature intended merely to reduce the guarantee of a minimum of two licenses to a guarantee of one license in each municipality, it could have done so by simply amending the word “two” to read “one”, yet it did not do so.
The general purpose and intent of the statute is to limit the number of licenses issued to one license for each 2,500 residents or major fraction thereof in each wet county. Our construction of the statute is more in keeping with that purpose and intent than would be the construction that each municipality would be entitled to one license even though it had less than 1,251 residents.
The fact that the limitations of the statute, as we construe it, may operate to prohibit the sale of liquor in some municipalities having a population of less than 1,251 persons, thereby creating dry areas in a wet county, would not seem to us to be violative of Article XIX, Fla.Const., F.S.A., the local option provision of the Constitution.
In this provision of the Constitution the counties, not cities, are made the geographical and governmental units within which the citizens are given authority to determine whether the sale of liquor shall be permitted or prohibited. In a wet county the Constitution does not require that liquor be sold in every area of the county.
We therefore conclude that the action of the respondent in authorizing the transfer of the license involved herein was violative of the subject statute and that such action should be rescinded.
In his brief the respondent contends that the relator municipality is not a proper party to bring this action, there being no allegation that the respondent’s action is in violation of an ordinance or regulation of the relator municipality. Respondent cites no authorities to support this contention.
*5 Respondent does not contend that a municipality may not be relator in a petition for mandamus, but does contend that it cannot be such in this proceeding because there is no allegation showing that the relator municipality’s ordinances are violated. We do not think this a necessary fact to be shown.
This Court in Florida Cent. & P. R. Co. v. State ex rel. Mayor, etc. of Town of Tavares, 1893, 31 Fla. 482, 13 So. 103, at page 105, 20 L.R.A. 419, 34 Am.St.Rep. 30, said:
“ * * * [T]he decided weight and preponderance of the authorities establish the following to be the correct rule as to who are proper relators in mandamus proceedings: When the remedy is resorted to for the purpose of enforcing a private right, the person interested in having the right enforced must be the relator. The relator (in such case) is considered the real party, and his right to the relief must clearly appear; but where the object is the enforcement of a public right the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed, and the duty in question enforced.’ 14 Amer. & Eng.Enc.Law, 218 and authorities there cited. The above has been adopted by this court as being the correct rule in McConihe v. State, 17 Fla. 238, and in State v. Crawford, 28 Fla. 441, 10 So. 118 [14 L.R.A. 253].”
It seems clear to us that the act of the respondent so affects the relator municipality and all the citizens thereof as to characterize it as an act of public nature. It cannot be doubted that the sale of liquor within the municipality may affect the welfare and morals of the community and may involve the issuance of a municipal license, the adoption of zoning ordinances, health and sanitation regulations and ordinances regarding hours of sale of liquors therein.
To the extent that the issuance of liquor licenses is authorized by the statute the municipality cannot complain of the issuance thereof for use within its boundaries, but the municipality, and all its citizens, have a common public right to secure cancellation of the issuance of such a license for use within its boundaries where not authorized under the statute. This right may be enforced by mandamus brought by the municipality as a legal entity.
The respondent’s motion to quash the alternative writ is denied and the peremptory writ is issued.
TERRELL, C. J., and ROBERTS, DREW and THORNAL, JJ., concur.