**STATE of Indiana on the Relation of Jack P. CITTADINE, Appellant–Realtor,**

v.

**The INDIANA DEPARTMENT OF TRANSPORTATION, and Michigan Southern Railroad Company, et al., Appellees–Respondents.**

**No. 20A03–0010–CV–395.**

Court of Appeals of Indiana.

July 20, 2001.

---

1. Estes did receive vacation pay from Keystone in 2000.

Stephen Carter, Atty. Gen., Janet Parsanko, Deputy Atty. Gen., for State.

Jack P. Cittadine, Nancy A. McCaslin, Elkhart, Jeffrey A. Cooke, Lafayette, Indiana, Attorneys for Appellant.

William G. Lavery, Ian J. Forte, Elkhart, Indiana, Attorneys for Appellees.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Relator–Appellant Jack Cittadine ("Cittadine") appeals the trial court's denial of his motion for a permanent mandamus order directed to Appellee–Respondent Indiana Department of Transportation ("INDOT"). Because the mandamus action pertained to enforcement of a statute against Michigan Southern Railroad ("Michigan Southern"), the railroad was made a party below and is also a party on appeal.[1]

We affirm.

### ISSUE

The following issue, raised by both INDOT and Michigan Southern Railroad, is dispositive: whether Cittadine has standing to secure a mandamus order.

### FACTS AND PROCEDURAL HISTORY

Michigan Southern is a rail common carrier operating in Michigan and Indiana under authority issued by the Federal Surface Transportation Board (the "Board") of the United States Department of Transportation. Michigan Southern operates a line running from Elkhart, Indiana to Mishawawka, Indiana, known as the Elkhart & Western ("E & W"), which is connected to the North American railroad transportation system. Michigan Southern is connected to the North American railroad system via physical connection with Norfolk Southern and other rail entities.

In December of 1996, Michigan Southern began operations in Elkhart, Indiana. Michigan Southern provides local freight service for Elkhart industries by providing rail cars for the industries to load, and then by picking up the cars and delivering them to Norfolk Southern for transit to various destinations. Michigan Southern also picks up loaded rail cars from Norfolk Southern and delivers the cars to local industries that have need of the products contained therein.

As part of the E & W, Michigan Southern operates an interchange track which intersects three downtown Elkhart roadways: Prairie Street, Jackson Boulevard,

---

1. Norfolk Southern Railway Company ("Norfolk Southern") intervened below, and it has filed an appellate brief as amicus curiae.

and Elkhart Avenue. The interchange track is designed to operate as a switching station for incoming and outgoing railroad cars in making deliveries to and from Michigan Southern's local customers.

At the request of Cittadine, on June 18, 1999, INDOT, which is authorized to regulate railroads and other transportation entities pursuant to Ind.Code § 4–21.5–3, ordered Michigan Southern to cease use of the interchange track near Jackson Boulevard in such a manner that would violate Ind.Code § 8–6–7.6–1. This statute prohibits the obstruction of a motorist's view at rail-highway intersections for 1,500 feet in each direction. After a subsequent review, on June 5, 2000, INDOT rescinded its order as it pertained to the presence of rolling stock on the interchange.[2]

Cittadine petitioned the trial court for both an emergency and a permanent mandamus order against INDOT. Specifically, Cittadine asked that the trial court mandate INDOT to interpret Ind.Code § 8–6–7.6–1 in such a manner that Michigan Southern would be prevented from placing rolling stock upon the interchange. The trial court denied the permanent mandate on the basis that INDOT had discretion in the enforcement of the statute. This appeal ensued.

### DISCUSSION AND DECISION

INDOT and Michigan Southern contend that Cittadine lacks standing to challenge the manner in which INDOT interprets and enforces Ind.Code § 8–6–7.6–1. In response, Cittadine does not contend that he has private standing; however, he does contend that he can bring this suit under the public standing doctrine. In support of his contention, he cites *State ex rel. Cutter v. Kamman*, 151 Ind. 407, 51 N.E. 483, 484 (1898) and *Wampler. v. State ex*

rel. *Alexander*, 148 Ind. 557, 47 N.E. 1068 (1897) for the proposition that a person seeking a mandamus as to a matter of general interest to the public may establish public standing by showing that he has an interest in common with other citizens in the execution of the law.

The public standing doctrine was discussed by this court in *Fort Wayne Education Association v. Indiana Department of Education*, 692 N.E.2d 902 (Ind.App. 1998), *trans denied*. In that case we recited the pre–1995 approach to public standing:

> Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court [has] held ... that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official.

*Id.* at 904 (quoting *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind.1985)) (citations omitted).

We noted that the public standing doctrine was revisited by our supreme court in *Pence v. State*, 652 N.E.2d 486 (Ind. 1995). We then noted the supreme court's change in emphasis:

> While the availability of taxpayer or citizen standing may not be foreclosed in extreme circumstances, it is clear that such status will rarely be sufficient. For a private individual to invoke judicial power, such person must ordinarily show that some direct injury has or will be immediately sustained. "[I]t is not sufficient that he has merely a general

---

**2.** The parties have not defined the term "rolling stock," but from our review of the record and the appellate briefs it appears that the term refers to rail cars and locomotives.

interest in common to all members of the public."

*Id.* at 904–05 (quoting *Pence,* 652 N.E.2d at 488). The supreme court's holding is based in part upon the fact that standing is a key component in maintaining our State constitutional scheme of separation of powers. *See Pence,* 652 N.E.2d at 488.

In the present case, Cittadine makes no attempt to show that he had any personal contact with Michigan Southern or that he suffered or will suffer a direct injury. Cittadine merely identifies himself as a member of the "motoring public" who "got involved because I had several people ask me to see whether these laws could be enforced." (R. 64). His sole argument for standing is the incorrect statement that "[a]ny member of the general public can bring this petition." (R. 72).

Although Cittadine claims that his request is one which affects all citizens of the State, a claim which both the trial court and this court reject, he has made no attempt to show the extreme circumstances required by *Pence.* Our examination of the record discloses that after finding the placement of rolling stock on Michigan Southern's interchange track had been rendered safe by the repair of train activated lights and gates that previously had not been in operation, and after noting that enforcement of Ind.Code § 8–6–7.6–1 has a possible impact upon federal regulation of railroads, INDOT exercised its power as an arm of the executive branch to enforce the statute in a manner consistent with its authority. We hold that no circumstances exist that would warrant judicial interference with the functions of the administrative branch in this case. Therefore, Cittadine does not meet the requirements as set forth in *Pence* and discussed in *Fort Wayne.*

Cittadine cites *Pitts v. Mills,* 165 Ind. App. 646, 333 N.E.2d 897 (1975) for the proposition that by filing an action for mandamus he need not comply with the requirements of *Pence* and *Fort Wayne.* He emphasizes the statement in *Pitts* that "[i]n a sense the state is allowing an individual to enforce in the name of the state a remedy which the individual, as such, is not entitled to have." *Id.* at 902.

*Pitts* addresses the issue of whether the party seeking mandamus complied with all the procedural terms of the mandate statute, not the issue of public standing. Therefore, the statement emphasized by Cittadine addresses the necessity of compliance with the procedural statutes as a prerequisite to the pursuit of a remedy in the State's name. The statement is not meant as authorization to circumvent the separation of powers concerns addressed by the public standing doctrine as interpreted in *Pence.*

## CONCLUSION

The trial court was correct in denying Cittadine's petition for a permanent mandate. Affirmed.

RILEY, J., and FRIEDLANDER, J., concur.