STATE of Indiana on the Relation of Jack P. CITTADINE, Petitioner/Appellant, Relator Below,

v.

INDIANA DEPARTMENT OF TRANSPORTATION, Respondent/Appellee, Respondent Below,

Michigan Southern Railroad Company, et. al., Respondent/Appellees, Intervenors Below.

No. 20S03–0306–CV–260.

Supreme Court of Indiana.

June 24, 2003.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Indiana Dept. of Transportation.

William G. Lavery, Ian J. Forte, Whisler & Lavery, Elkhart, IN, Attorneys for Appellee Michigan Southern Railroad Company.

DICKSON, Justice.

The relator-appellant Jack Cittadine appeals from the trial court's denial of his petition for an emergency and permanent writ of mandamus to require the Indiana Department of Transportation ("INDOT") to enforce Indiana's Clear View Statute[1] against Michigan Southern Railroad ("Michigan Southern") and any other railroad in violation of the statute.[2] The Court of Appeals affirmed, finding that Cittadine lacked standing to bring this action. *Cittadine v. Indiana Dept. of Transp.*, 750 N.E.2d 893, 896 (Ind.Ct.App. 2001). We grant transfer to acknowledge the availability of the public standing doctrine in Indiana courts.

Our standing requirement is a matter of Indiana jurisprudence. The judicial doctrine of standing is intended to assure that litigation will be actively and vigorously contested. *Schloss v. City of Indianapolis*, 553 N.E.2d 1204, 1206 (Ind.1990). It focuses on whether the complaining party is the proper person to invoke the court's power. *Id.* Unlike the language of Article

III, Section 2 of the United States Constitution, the Indiana Constitution contains no "case or controversy" requirement. We have observed that an analogous function is fulfilled by the distribution of powers provision in Article 3, Section 1, of the Indiana Constitution.[3] *See Dept. of Environmental Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331 (Ind.1994). While noting this source of judicial restraint, however, we stated: "While this Court respects the separation of powers, we do not permit excessive formalism to prevent necessary judicial involvement. Where an actual controversy exists we will not shirk our duty to resolve it." *Id.* at 337.

Under our general rule of standing, only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing. *Oman v. State*, 737 N.E.2d 1131, 1135 (Ind. 2000); *Hammes v. Brumley*, 659 N.E.2d 1021, 1029–30 (Ind.1995); *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind.1993); *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind. 1985). Absent this showing, complainants may not invoke the jurisdiction of the court. *Higgins*, 476 N.E.2d at 101. It is generally insufficient that a plaintiff merely has a general interest common to all members of the public. *Terre Haute Gas Corp. v. Johnson*, 221 Ind. 499, 505, 45 N.E.2d 484, 486 (1942).

---

1. At the time of the commencement of this action, Indiana Code § 8–6–7.6–1 provided that each railroad "shall maintain each public crossing under its control in such a manner that the operator of any licensed motor vehicle has an unobstructed view for fifteen hundred (1500) feet in both directions along the railroad right-of-way subject only to terrain elevations or depressions, track curvature, or permanent improvements." As more fully described in footnote 12, *infra*, this statute has since been amended.

2. Michigan Southern was made a party to the action below and is a party on appeal.

3. "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Cittadine seeks to avoid this general rule by invoking the public standing exception. He does not contend that he has suffered a specific injury, but argues that, because the object of the mandate is to procure the enforcement of a *public* duty, he has standing under Indiana's public standing doctrine. Br. of Appellant at 6. As we recently noted in *Schloss:*

Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court held in those cases that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official.

*Schloss,* 553 N.E.2d at 1206 n. 3 (*quoting Higgins,* 476 N.E.2d at 101). Specifically, the public standing doctrine eliminates the requirement that the relator have an interest in the outcome of the litigation different from that of the general public. *Higgins,* 476 N.E.2d at 101.

The public standing doctrine has been recognized in Indiana case law for more than one hundred and fifty years. In *Hamilton v. State ex rel. Bates,* 3 Ind. 452 (1852), a citizen and taxpayer of Marion County urged that a 15% increase in the county's land valuation by the State Equalization Board was invalid because it was made in the absence of a representative from the Sixth District. Ordering a peremptory mandamus to issue commanding the Marion County Auditor to disregard the increase, this Court addressed the relator's right to bring the claim:

Were this a case merely for private relief, the relator would have to show some special interest in the subject-matter. But here the case is different. The defendant, who was County Auditor, refused to issue the legal duplicate for the collection of the taxes, and a *mandamus* was applied for to compel him to discharge this duty of his office. It is a case for the enforcement, not of a private, but of a public right; and it is not necessary, in such cases, that the relator should have a special interest in the matter, or that he should be a public officer. That the defendant should discharge, correctly, the duties of his office, was a matter in which *Bates,* as a citizen of the county, had a general interest; and that interest was, of itself, sufficient to enable him to obtain the *mandamus* in question, and have his name inserted as the relator.

*Id.* at 458. Similarly, in *Bd. of Com'rs of Decatur County v. State ex rel. Hamilton,* 86 Ind. 8 (1882), this Court stated that:

[W]here the question is one of public concern, and the object of the mandate is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result sought to be accomplished. In such a case it is only necessary that the relator shall be a citizen, and as such interested in the execution of the laws.

*Id.* at 12–13. In *Wampler v. State ex rel. Alexander,* 148 Ind. 557, 47 N.E. 1068 (1897), the Court expressed the principle as follows:

Where the question involved in a mandamus proceeding is of a public concern, as is the one herein, and the object of the action is to enforce the performance of a public duty or right in which the people in general are interested, the applicant for the writ is not required to show any legal or special interest in the result sought to be obtained.

*Id.* at 571–72, 47 N.E. at 1072. In determining that "the relators are shown to have the requisite degree of interest to enable them to maintain this action[,]" the Court relied not upon their status as trust-

ees, but as citizens "interested in common with other citizens in the execution of the law." *Id.* at 572, 47 N.E. at 1071–72. *See also, Brooks v. State, ex rel. Singer,* 162 Ind. 568, 70 N.E. 980 (1904); *Meyer v. Town of Boonville,* 162 Ind. 165, 70 N.E. 146 (1904); *Zuelly v. Casper,* 160 Ind. 455, 67 N.E. 103 (1903); *State ex rel. Cutter v. Kamman,* 151 Ind. 407, 51 N.E. 483 (1898); *Bd. of Comm'rs of Clarke County v. State ex rel. Lewis,* 61 Ind. 75 (1878); *Bd. of Comm'rs of Clay County v. Markle,* 46 Ind. 96 (1874).

In addition to cases involving the enforcement of a public right or duty, the principles embodied in the public standing doctrine have also frequently been applied in cases challenging the constitutionality of governmental action, statutes, or ordinances. In *Bd. of Comm'rs of Clay County v. Markle,* 46 Ind. 96 (1874), nine residents, citizens, taxpayers, and voters charged that a statute and county-seat relocation proceedings predicated thereon were unconstitutional. *Id.* at 100. In response to the defendants' claims that the plaintiffs' injuries were in common with other taxpayers, citizens, and voters of the county, the Court analyzed not only Indiana case law, but also that of Iowa,[4] Illinois,[5] Maryland,[6] and New Hampshire,[7] concluding that "remedy may be had by any tax-payer in his own name." *Id.* at 104 (*citing City of Lafayette v. Cox,* 5 Ind. 38 (1854); *Oliver v. Keightley,* 24 Ind. 514 (1865)). Similarly, in *Brooks v. State, ex rel. Singer,* 162 Ind. 568, 70 N.E. 980 (1904), this Court addressed the constitutionality of the legislative apportionment act of 1903 upon the request of a resident, citizen, and voter of Ripley County. *Id.* at 570, 70 N.E. at 980. The Court stated:

We entertain no doubt of the right of the relator to maintain this action. Every male inhabitant of the State, over the age of twenty-one years at the time the last preceding enumeration of such inhabitants was taken, has a direct interest in the constitutional apportionment of senators and representatives throughout the State, and if, by an apportionment act, his rights in this respect are denied or impaired, he may obtain redress by proper action in the courts.

*Id.* at 577, 70 N.E. at 983. In *Davis Const. Co. v. Bd. of Com'rs of Boone County,* 192 Ind. 144, 132 N.E. 629 (1921), a township resident and taxpayer challenged both a county contract and the act of 1919 upon which it was based. The Court rejected the Board of Commissioners' argument that the taxpayer had no standing to challenge the statute's constitutionality:

And a taxpayer clearly has sufficient interest to question the constitutionality of the statute under which it is sought to impose a burden upon the property of a taxing district in which he lives and owns property subject to assessment, where the action seeking to impose a burden under such statute remains otherwise undefended.

*Id.* at 147, 132 N.E. at 630. The public standing doctrine was also applied to permit constitutional challenges in *Graves v. City of Muncie,* 255 Ind. 360, 264 N.E.2d 607 (1970), *Mitsch v. City of Hammond,* 234 Ind. 285, 125 N.E.2d 21 (1955), *Zoercher v. Agler,* 202 Ind. 214, 172 N.E. 186 (1930), *Ellingham v. Dye,* 178 Ind. 336, 99 N.E. 1 (1912), *Fesler v. Brayton,* 145 Ind. 71, 82, 44 N.E. 37, 40 (1896), and *Denney v. Basler,* 144 Ind. 503, 42 N.E. 929 (1896).

**4.** *Rice v. Smith,* 9 Iowa 570 (1859).

**5.** *Colton v. Hanchett,* 13 Ill. 615 (1852).

**6.** *Mayor of Baltimore v. Gill,* 31 Md. 375 (1869).

**7.** *Merrill v. Plainfield,* 45 N.H. 126 (1863).

Public standing principles have also been applied to permit numerous actions challenging various governmental activities or ordinances on grounds other than ·constitutionality. *See, e.g., Miller v. City of Evansville,* ·244 Ind. 1, 189 N.E.2d 823 (1963); *Hamer v. City of Huntington,* 215 Ind. 594, 21 N.E.2d 407 (1939); *Noble v. Davison,* 177 Ind. 19, 96 N.E. 325 (1911); *Jordan v. City of Logansport,* 171 Ind. 280, 86 N.E. 47 (1908); *Meyer v. Town of Boonville,* 162 Ind. 165, 70 N.E. 146 (1904); *Scott v. City of Laporte,* 162 Ind. 34, 68 N.E. 278 (1903); *Bd. of Comm'rs of Owen County v. Spangler,* 159 Ind. 575, 65 N.E. 743 (1902); *Myers v. City of Jeffersonville,* 145 Ind. 431, 44 N.E. 452 (1896); *Bd. of Comm'rs of Henry County v. Gillies,* 138 Ind. 667, 38 N.E. 40 (1894); *Town of Winamac v. Huddleston,* 132 Ind. 217, 31 N.E. 561 (1892); *Gemmil v. Arthur,* 125 Ind. 258, 25 N.E. 283 (1890); *City of Valparaiso v. Gardner,* 97 Ind. 1 (1884); *City of Madison v. Smith,* 83 Ind. 502 (1882); *O'Boyle v. Shannon,* 80 Ind. 159 (1881); *Warren County Agric. Joint Stock Co. v. Barr,* 55 Ind. 30 (1876); *Rothrock v. Carr,* 55 Ind. 334 (1876); *Bd. of Comm'rs of Benton County v. Templeton,* 51 Ind. 266 (1875); *Hurd v. Walters,* 48 Ind. 148 (1874); *English v. Smock,* 34 Ind. 115 (1870); *Harney v. The Indianapolis, Crawfordsville, & Danville R.R. Co.,* 32 Ind. 244 (1869).

The public standing doctrine is not unique to Indiana. The Illinois Supreme Court stated in *Retail Liquor Dealers Protective Ass'n v. Schreiber,* 382 Ill. 454, ·47 N.E.2d 462 (1943): "Where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough

that he is interested as a citizen in having the laws properly executed." *Id.* at 464. The Florida Supreme Court used nearly identical language in *State ex rel. Village of North Palm Beach v. Cochran,* 112 So.2d 1, 5 (Fla.1959). In *Tax Equity Alliance for Massachusetts v. Comm'r of Revenue,* 423 Mass. 708, 672 N.E.2d 504 (1996), the Massachusetts Supreme Court said that "[u]nder the public right doctrine, any member of the public may seek relief in the nature of mandamus to compel the performance of a duty required by law." *Id.* at 508. In the same year, the South Dakota Supreme Court discussed public standing in *Stumes v. Bloomberg*: "If the taxpayer or elector seeks to protect a public right, no special injury or special interest need be established." 551 N.W.2d 590, 592 (S.D.1996). Similarly, the West Virginia Supreme Court "has consistently held that the enforcement of a public right may be sought by anyone who shares a common interest in that right with the public at large." *Daily Gazette Co., Inc. v. Committee on Legal Ethics of the West Virginia State Bar,* 174 W.Va. 359, 326 S.E.2d 705, 707–08 n. 2 (1984). In the case of *Wells v. Purcell,* 267 Ark. 456, 592 S.W.2d 100 (1979), the Arkansas Supreme Court stated that:

> The rule is well settled, that when, in the absence of statutory regulation, the proceedings are for the enforcement of a duty affecting not a private right, but a public one, common to the whole community, it is not necessary that the relator should have a special interest in the matter, or that he should be a public officer.

*Id.* at 103. Other states that recognize the public standing doctrine include Ohio,[8] Cal-

---

**8.** *State ex rel. White v. City of Cleveland,* 34 Ohio St.2d 37, 295 N.E.2d 665, 668 (1973) ("[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of public duty, the people are

ifornia,[9] and Pennsylvania.[10]

In the present case, the appellees IN-DOT and Michigan Southern urge that Cittadine's claim of public standing is foreclosed by *Pence v. State,* 652 N.E.2d 486 (Ind.1995). Our Court of Appeals agreed, believing that Pence had "revisited" and adopted a "change in emphasis" regarding the public standing doctrine. *Cittadine,* 750 N.E.2d at 895.

In *Pence,* the plaintiffs sought to challenge provisions of a statutory enactment that brought Indiana into accord with the federal Americans with Disabilities Act, but which also included provisions related to the salary of members of the Indiana General Assembly. The plaintiffs claimed that the salary provisions violated Article 4, Section 19 of the Indiana Constitution which generally requires that legislative enactments be "confined to one subject and matters properly connected therewith." Noting that the plaintiffs were allegedly interested as citizens and, as to one plaintiff, as a taxpayer, this Court declined to address the plaintiffs' claim applying the general standing rule because the plaintiffs "failed to demonstrate any interest beyond that of the general public." 652 N.E.2d at 488.

Significantly, the majority opinion in *Pence* did not expressly discuss the public standing doctrine, but observed:

> While the availability of taxpayer or citizen standing *may not be foreclosed in extreme circumstances,* it is clear that such status will rarely be sufficient.

. For a private individual to invoke the exercise of judicial power, such person must *ordinarily* show that some direct injury has or will immediately be sustained.

*Id.* (emphasis added). This language clearly does not abrogate but rather acknowledges the public standing doctrine. We view application of the standing rule in *Pence* merely to express our exercise of judicial discretion with cautious restraint under the circumstances. We hold that *Pence* did not alter the public standing doctrine in Indiana.

■    The public standing doctrine, which applies in cases where public rather than private rights are at issue and in cases which involve the enforcement of a public rather than a private right, continues to be a viable exception to the general standing requirement. The public standing doctrine permits the assertion of all proper legal challenges, including claims that government action is unconstitutional.

However, persons availing themselves of the public standing doctrine nevertheless remain subject to various limitations. Thus, for example, the doctrine does not prevent application of the Indiana Public Lawsuit Act, Ind.Code § 34–13–5–1 through –5–12, or the requirement of exhaustion of administrative remedies, *see, e.g., State Bd. of Tax Comm's v. Ispat Inland,* 784 N.E.2d 477, 482 (Ind.2003); *Fratus v. Marion Community Schools Bd. of Trustees,* 749 N.E.2d 40, 46–47 (Ind. 2001); *Town Council of New Harmony v.*

regarded as the real party.") (*quoting* 35 Ohio Jurisprudence 2d 426, § 141.)

9.   *Kinlaw v. State,* 54 Cal.3d 326, 285 Cal. Rptr. 66, 814 P.2d 1308, 1319 (1991) (Noting that public standing "promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.")

10.   *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 187 (1988). Pennsylvania allows taxpayers having no direct, substantial, and immediate interest in the outcome of a matter to nevertheless challenge a governmental action if it would otherwise go unchallenged.

*Parker*, 726 N.E.2d 1217, 1224 (Ind.2000); *Austin Lakes Joint Venture v. Avon Util., Inc.*, 648 N.E.2d 641, 644–45 (Ind.1995). Similarly, although the Indiana Declaratory Judgment Act expressly authorizes Indiana courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed," Ind. Code § 34–14–1–1, to the extent that persons claiming public standing may be seeking only declaratory relief, they must be persons "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise ...." I.C. § 34–14–1–2. *See Town of Munster v. Hluska*, 646 N.E.2d 1009, 1012 (Ind.Ct.App.1995) ("In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought, not merely a theoretical question or controversy but a real or actual controversy, or at least the 'ripening seeds of such a controversy,' and that a question has arisen affecting such right which ought to be decided in order to safeguard such right.") (*quoting Morris v. City of Evansville*, 180 Ind.App. 620, 622, 390 N.E.2d 184, 186 (1979)).

### Application

■ Cittadine commenced this action on August 30, 2000, as a member of the motoring public, seeking to require INDOT to enforce, against Michigan Southern and other railroads in the state, Indiana Code § 8–6–7.6–1 (1998),[11] which expressly prohibited railroads from allowing obstructions to block motorists' views for a distance of 1500 feet in each direction of an intersection of public roadways with railroad tracks. The trial court initially granted his request for an emergency writ of mandamus but, following a full evidentiary hearing, denied the petition for a permanent writ on September 19, 2000, on grounds other than lack of standing. Record at 257–58. The Court of Appeals affirmed, but on grounds that Cittadine lacked standing to bring the action. We conclude that Cittadine's claim, which involves the enforcement of a public right, qualifies for the public standing doctrine. His action is thus not prevented by the requirement that he have an interest in the outcome of the litigation different from that of the general public. *See Higgins*, 476 N.E.2d at 101.

■ We note, however, that the challenged statute was amended effective July 1, 2001, to grant INDOT the authority to adopt rules, based on certain factors, that vary the unobstructed view requirement. The amended statute also reduces the unobstructed-view requirement for crossings with train-activated crossing gates. I.C. § 8–6–7.6–1 (Supp.2001).[12] Because the relief sought by Cittadine's petition for a writ of mandamus is the enforcement of statutory provisions that no longer exist but have since been substantially amended, his claim is now moot.

---

11. The text of the statute is provided in footnote 1, *supra*.

12. This statute was amended in 2001 by adding the introductory clause "Except as provided in subsection (b) or in a rule adopted by the Indiana department of transportation" and by adding the following sentence:

However, the Indiana department of transportation may adopt rules under IC 4–22–2 to adjust the distance of the unobstructed view requirement under this subsection based on variances in train speeds, number of tracks, angles of highway and rail crossing intersections, elevations, and other factors consistent with accepted engineering practices.

2001 Ind. Acts 103–2001, § 1. In addition, a new subsection (b) was added that provides an exemption for public crossings equipped with a train activated crossing gate "if the railroad maintains an unobstructed view for at least two hundred fifty (250) feet in both directions along the railroad right-of-way." *Id.*

On grounds of mootness, we affirm the trial court's denial of Cittadine's petition for permanent writ of mandamus.

SHEPARD, C.J., and SULLIVAN, BOEHM and RUCKER, JJ., concur.