

FILED

Feb 24 2016, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Allison Wells Gritton
Wooden McLaughlin LLP
Indianapolis, Indiana

Rosemary G. Spalding
Sharon A. Hilmes
Spalding & Hilmes, PC
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
ACLU OF INDIANA, CITIZENS
ACTION COALITION OF INDIANA,
AND COMMON CAUSE INDIANA

Gavin M. Rose
ACLU of Indiana

Jennifer Washburn
Citizens Action Coalition, Inc.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Benjamin J. Church
Assistant Corporation Counsel
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE

Jo Angela Woods
Indiana Association of Cities &
Towns and Indiana Municipal
Lawyers Association

Stephen C. Unger
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Graphic Packaging Int'l, Inc.; Rock-Tenn Converting Co. and Cathy Weinmann, | February 24, 2016 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 49A04-1504-PL-165 |
| v. | Appeal from the Marion Superior Court |
| City of Indianapolis and the City of Indianapolis Public Works, | The Honorable Cynthia J. Ayers, Judge |
| *Appellees-Defendants* | Trial Court Cause No. 49D04-1409-PL-29775 |

**Baker, Judge.**

[1] In 2012, the City of Indianapolis amended a contract with the company that provides city residents with waste disposal services. The amendment went above and beyond the provisions of services, however, as it required the construction and maintenance of a $45 million facility. By including provisions related to the design, construction, and maintenance of this new facility, the amendment fell under the purview of section 4 of the Waste Disposal Statute, which requires, among other things, public bidding and public participation in the process. That did not occur. Therefore, the contract is void for failing to comply with the statute.

[2] Graphic Packaging International (Graphic Packaging), Rock-Tenn Converting Co. (Rock-Tenn), and Cathy Weinmann (collectively, the Plaintiffs) appeal the trial court's order granting summary judgment in favor of the City of Indianapolis (the City) and the City of Indianapolis Board of Public Works (the Board) (collectively, the Government) on the Plaintiffs' complaint against the City. The Plaintiffs argue that the trial court erred by concluding that:

(1) there is no private right of action to raise these claims against the City under

(a) the Waste Disposal Statute;[1]

---

[1] Ind. Code ch. 36-9-31.

> (b)    the Public Lawsuit Statute;[2] or
>
> (c)    the Uniform Declaratory Judgment Act;[3]
>
> (2)    the Plaintiffs do not have standing under
>
> (a)    traditional standing analysis; or
>
> (b)    the public standing doctrine; and
>
> (3)    the contract at issue does not violate the Waste Disposal Statute.

We find that the Plaintiffs have a right of action under the Waste Disposal Statute, that they have standing under the public standing doctrine, and that the contract at issue violates the Waste Disposal Statute as a matter of law. Therefore, we find that the trial court erred by awarding summary judgment in favor of the Government, reverse that judgment, and remand with instructions to enter summary judgment in favor of the Plaintiffs.

# Facts[4]

[3]    In late 1985, the City entered into a contract (the Original Agreement) with Massburn, Inc., the predecessor of Covanta Indianapolis, Inc. (Covanta), for the disposal of solid waste through waste-to-energy incineration technology. As part of the Original Agreement, Covanta agreed to receive and dispose of all acceptable solid waste provided to it by the City. The service was to be

---

[2] Ind. Code ch. 34-13-5.

[3] Ind. Code ch. 34-14-1.

[4] We held oral argument in Indianapolis on February 10, 2016. We thank counsel for the parties and *amici* for their excellent written and oral presentations.

performed at a facility designed, constructed, owned, maintained, and operated by Covanta. Construction of the facility began in 1985, and it was fully operational in 1989.

[4] In 2008, the City and Covanta amended the Original Agreement (the First Amendment). The First Amendment extended the term of the contract until 2018, with two optional five-year extensions available. The First Amendment also required the City to deliver a certain volume of waste to Covanta or pay a penalty (a "put or pay" contract).

[5] On August 6, 2014, the Government approved another amendment to the Original Agreement (the Second Amendment). The Board did not hold a public meeting or follow a public bidding process before approving the Second Amendment. Among other things, the Second Amendment makes the following changes to the Original Agreement:

- Covanta is entitled to design, construct, and operate an advanced materials recovery center (the ARC Facility) for the recovery of certain materials from the waste stream that may be suitable for recycling.
- Covanta has exclusive right to the City's waste for another ten years, extending the contractual term to December 31, 2028.
- There is no minimum recyclable recovery requirement on Covanta.
- There is no longer a "put or pay" provision in the agreement.
- The City must pay 70% of Covanta's taxes for the ARC Facility, up to $4 million.
- If the City were to expand its clean recycling options, it would face significant liquidated damages.
- If the current subscription curbside recycling program were to collect 5% more recyclables per year than the year prior to the opening of the ARC Facility, then the City's portion of revenue will decrease.

- The City is prohibited from working with the private sector to improve recycling programs for the next fourteen years.

[6] The recyclable materials recovered and processed through the ARC Facility will be subject to a collection method whereby there is no source separation and trash and recyclables are mixed together (Dirty Recycling). In other words, consumers will place all trash and all recyclables into the same collection containers; the materials collected will then be sorted at the ARC Facility into recyclables and non-recyclables. Dirty Recycling results in a significantly higher rate of recovered materials that are not suited for use in manufacturing recycled materials than a program that does not mix recyclables with trash (Clean Recycling). Furthermore, glass will not be recovered for recycling at the ARC Facility. Waste that is not separated for recycling will be incinerated; the resulting ash will be sent to a landfill.

[7] Graphic Packaging and Rock-Tenn (collectively, the Recycling Companies) are corporations engaged in the business of manufacturing and selling paperboard and folding cartons. The Recycling Companies purchase recycled paper and paperboard for the manufacture of their products. These companies will not be purchasing recycled material originating from the ARC Facility, as the material will not meet quality specifications due to contamination. In other words, the ARC Facility will reduce the amount of materials in the market that meet their needs. Rock-Tenn potentially would have bid on or responded to a Request for Proposal for a recyclables recovery facility for the City if the City had followed

public bidding procedures. The final plaintiff, Cathy Weinmann, is a citizen of Indianapolis.

[8] On September 5, 2014, the Plaintiffs filed a complaint against the Government, challenging the validity of the Second Amendment and the procedure by which it was awarded. The Government filed a motion to dismiss and for summary judgment; the plaintiffs objected to dismissal and filed a cross-motion for summary judgment. Following briefing and oral argument, the trial court granted summary judgment[5] in favor of the Government on April 6, 2015. In pertinent part, the trial court found that (1) none of the Plaintiffs had standing; (2) even if the Plaintiffs had standing, the Government was not required by the Waste Disposal Statute to engage in a competitive bidding or a request for proposal proceeding; and (3) the term of the contract does not exceed forty years in contravention of the Waste Disposal Statute. The Plaintiffs now appeal.[6]

---

[5] To the extent that the trial court styled its ruling as a grant of the Government's motion to dismiss the complaint, we note that because affidavits and other materials were attached to the motion to dismiss, it is treated as one for summary judgment pursuant to Indiana Trial Rule 56. *Bellows v. Bd. of Comm'rs of Cnty. of Elkhart*, 926 N.E.2d 96, 113-14 (Ind. Ct. App. 2010).

[6] We would be remiss if we did not acknowledge that on the day of oral argument in this case, local media reported electronically that Mayor Hogsett and Covanta have agreed to a ninety-day suspension of the Second Amendment for the possible purpose of renegotiation. *E.g.*, Hayleigh Colombo, *Hogsett Suspends Ballard Pact With Covanta for Recycling Plant*, INDIANAPOLIS BUSINESS JOURNAL, http://www.ibj.com/articles/57159-hogsett-suspends-ballard-pact-with-covanta-for-recycling-plant (last visited February 11, 2016). The case is not moot because the contract was merely suspended rather than terminated; therefore, we still held oral argument and are issuing a decision on the merits.

# Discussion and Decision

## I. Standard of Review

Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). . . .

> . . . And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.,* 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). This appeal also calls for us to interpret statutes and contractual language, each of which are pure questions of law to which we apply a de novo standard of review. *E.g.*, *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 513 (Ind. Ct. App. 2015) (statutes); *Lily, Inc. v. Silco, LLC*, 997 N.E.2d 1055, 1064 (Ind. Ct. App. 2013) (contracts), *trans. denied*. The parties agree that there are no issues of fact to be determined here.

## II. Right of Action/Standing

First, we must consider whether the Plaintiffs have a valid cause of action; second, whether they have standing to bring that cause of action. Whether a

statute creates a private right of action is a pure question of law. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 187 (Ind. 2011). Whether a party has standing is also a pure question of law. *Bellows*, 926 N.E.2d at 113-14.

## A. Right of Action

[11] Although the parties analyze and debate multiple potential causes of action, we find one dispositive: the Waste Disposal Statute. Indiana Code section 36-9-31-4(d) governs the validity of contracts awarded pursuant to section 4 of the Waste Disposal Statute.[7] Section 4 provides that "[a]n action to contest the validity of the contract awarded or the procedure by which it was awarded must be brought within thirty (30) days following the award of the contract. After that date, the contract is incontestable for any cause." I.C. § 36-9-31-4(d).

[12] The Government argues that subsection (d) does not create a new cause of action; instead, "it is nothing more than a time limit or statute of limitations within which to bring a lawsuit asserting a cause of action already provided for under Indiana law." Appellees' Br. p. 7. According to the Government, because the Waste Disposal Statute imposes a duty that benefits the public,

---

[7] As fully explained below, we find that the Second Amendment falls under section 4 of the Waste Disposal Statute.

rather than a private interest, no private cause of action should be inferred from the statute. *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005).[8]

[13] The Government concedes, however, that the Waste Disposal Statute does not contain an enforcement mechanism. If the legislature had included an enforcement mechanism, there would be a clear indication that there was no intent to create a private right of action. *E.g.*, *Stulajter v. Harrah's Ind. Corp.*, 808 N.E.2d 746, 748 (Ind. Ct. App. 2004) (holding that "[w]e have consistently held that a private cause of action will not be found where the legislature has expressly provided for enforcement of a statute"). As there is no enforcement mechanism, the Government's interpretation of the statute would render subsection (d) entirely meaningless. Therefore, this interpretation is untenable.

[14] The plain language of subsection (d) references an "action to contest the validity of the contract awarded or the procedure by which it was awarded[.]" I.C. § 36-9-31-4(d). It further puts in place a thirty-day time limit for bringing such an action. *Id.* To say that this language does not create a private cause of action would be to ignore multiple sentences written and passed by the General Assembly. We decline to do so, and find that subsection (d) clearly creates a

---

[8] In support of its contention that the Waste Disposal Statute confers a public benefit, the Government points to the public bidding provisions of the statute. We note our incredulity that the Government makes this argument given that the Government's failure to abide by those public bidding requirements is one of the central issues in this litigation.

right of action to challenge contracts, as well as the procedures used to award those contracts, awarded under section 4 of the Waste Disposal Statute.

# B. Standing

The parties debate both traditional standing and public standing with respect to the right of the Plaintiffs to pursue their claims in this case. We will turn immediately to public standing, as we believe that doctrine provides the best fit for this litigation.

The public standing doctrine applies in cases where public, rather than private, rights are at issue and in cases that involve the enforcement of a public rather than a private right. *State ex rel. Cittadine v. Ind. Dep't of Transp.*, 790 N.E.2d 978, 980 (Ind. 2003). Although the Government argues that persons invoking public standing must have something more than a generalized interest to have standing, our Supreme Court disagrees. In *Cittadine*, our Supreme Court held as follows:

- "the public standing doctrine eliminates the requirement that the [plaintiff] have an interest in the outcome of the litigation different from that of the general public," *id.*;
- "'when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter,'" *id.* (quoting *Schloss v. City of Indianapolis*, 553 N.E.2d 1204, 1206 n.3 (Ind. 1990)).

Here, the Government concedes that this case involves matters of public interest. Pursuant to the plain language of *Cittadine*, therefore, the Plaintiffs

here need not have any special interest in the matter beyond that of the general public.

[17] The public rights sought to be enforced by the Plaintiffs in this case are contained within the language of the Waste Disposal Statute. Specifically, they point to the sections of the statute regarding public bidding, public hearings, and public review. According to the Plaintiffs, they "have standing under the public standing doctrine as citizens and taxpayers who are challenging the approval of a contract in violation of the public's right to participate in that process, which right is created by the Waste Disposal Statute." Appellants' Br. p. 38. We agree. Indeed, if these Plaintiffs do not have standing to seek to enforce this statute, we are left wondering who would. Once again, if we were to adopt the Government's analysis, we would essentially render meaningless an entire subsection of a statute. As members of the public, these Plaintiffs have an interest in ensuring that their government complies with the law, and the Waste Disposal Statute in no way limits who is entitled to file a cause of action seeking to enforce it. Therefore, we find that they have standing to raise these claims.

## III. Compliance with Waste Disposal Statute

[18] The parties argue about whether the Second Amendment ran afoul of the Waste Disposal Statute by (1) failing to comply with public bidding/review procedures; and (2) executing a contract that exceeds the forty-year limit put in place by the statute.

# A. Public Review Procedures

Contracts entered into pursuant to Indiana Code section 36-9-31-4(a) must be executed "in accordance with the requirements and conditions of this section." Included among the requirements and conditions of that section are the public bidding, request for proposals, and public notice/comment/hearing provisions. It is undisputed that the Government did not comply with any of those provisions in executing the Second Amendment. The parties disagree, however, about whether the Second Amendment falls under the purview of section 4.

Indiana Code section 36-9-31-4(a) provides that the Government is entitled to enter into contracts or agreements regarding "the design, construction, operation, financing, ownership, or maintenance of a facility for waste disposal[.]" The Government and its *amici* argue that the Second Amendment falls under the purview of section 3, rather than section 4, of the Waste Disposal Statute, contending that the Second Amendment is merely a waste disposal service contract rather than a construction contract:

> Indianapolis contracted with Covanta to have Covanta sort recyclables out of waste and then dispose of the remaining garbage. This is a service. To provide this service, Covanta will build the ARC. But this does not make the Second Amendment a contract for the construction of the ARC.

Govt. Amici Br. p. 20.

We disagree with the Government's interpretation of the Second Amendment. It is readily apparent that the Second Amendment falls squarely within section 4 inasmuch as it contemplates the design, construction, operation, financing, ownership, and maintenance of the ARC Facility—a waste disposal facility. Indeed, Covanta was *required* by the Second Amendment to design, engineer, construct, and operate the ARC Facility. As such, the Second Amendment falls under the purview of section 4. While the provision of services is also a part of the Second Amendment, we decline to ignore the contractual requirement for the construction of a multi-million dollar facility. In no way do we intend to curtail the ability of local governments to enter into waste disposal service contracts under section 3. We merely hold that when a contract goes well above and beyond the provision of services by requiring the construction of a massive facility, it walks and quacks like the proverbial section 4 duck we deem it to be.

At oral argument, counsel for the Government and its *amici* argued that because the ARC Facility would be owned by Covanta, rather than the City, the contract would not fall under section 4. Initially, we note that section 4 is not limited to government-owned facilities. Furthermore, to adopt this interpretation would be to permit the City to make an end-run around the requirements of the Waste Disposal Statute, which we decline to do. We also echo the Plaintiffs' *amici*, who point out that

> *of course* a private corporation is responsible for designing, constructing, and managing a waste disposal facility once it

enters into a contract with a public entity to design, construct, and manage that facility. And the fact that the decision to create the facility might have originated with the private corporation—motivated, at least in part, by a desire to increase profits—simply underscores the importance of an open and transparent decision-making process.

Pl. Amici Br. p. 20 (emphasis original). We find the fact that the ARC Facility would be owned by Covanta is a distinction without a difference under section 4.

[23] In its order, the trial court found that the more general section 3 of the Waste Disposal Statute, as opposed to the more specific section 4, governs the Second Amendment. Section 3 sets forth the general powers and duties of the Board, which includes provision of waste disposal services. I.C. §§ 36-9-31-3(3), -3(5). The trial court reasoned that because the terms of section 3 do not require compliance with the provisions of section 4, the Government was not required to engage in a competitive bidding or a request for proposal proceeding. We disagree with this approach, as it allows the more general language to prevail over the more particular and protective language of section 4, which violates well-established rules of statutory construction. *E.g.*, *Nordman v. N. Manchester Foundry, Inc.*, 810 N.E.2d 1071, 1074 (Ind. Ct. App. 2004) (noting that a "statute dealing with a subject in a specific manner controls over the statute dealing with the same subject in general terms"). This interpretation essentially renders section 4 superfluous. For contracts that are for the design, construction, operation, financing, ownership, or maintenance of a facility for

waste disposal, the specific provisions of section 4 must take priority over the general powers provisions of section 3.

[24] In a final attempt to escape the provisions of section 4, the Government argues that because the Second Amendment "constituted only an amendment to a contract already properly bid out," appellees' br. p. 13, they were not required to comply with section 4. The Government insists that the City could not have bid out the ARC Facility or have chosen who was to construct it because the City was merely granting Covanta the permission as a landlord to build its own facility.

[25] The plain language of the statute says otherwise. Section 4 *explicitly* applies to amendments:

> Before or after the expiration or termination of the term or duration of any contract or agreement entered into or granted under this section, the board, *in accordance with the requirements and conditions of this section*, may from time to time enter into *amended, extended, supplemental*, new, or further contracts or agreements with the same or any other person for any purpose referred to in this section.

I.C. § 36-9-31-4(a) (emphases added). Therefore, the fact that the Second Amendment was simply an amendment of a properly bid contract does not remove it from the purview of the requirements of section 4.[9]

[26] Finally, as a matter of public policy, the Waste Disposal Statute has, in the words of the Plaintiffs, a worthy theme of "a transparent, public process that allows competition and public review and input." Appellants' Br. p. 36. The Government concedes that public bidding laws are beneficial and that transparency is a worthy goal. Here, the process was wholly opaque. The citizens of this City have a right to debate whether the Second Amendment ultimately benefits the City. Had the policy of public input and transparency been honored, the citizens of this City would have had the chance to learn about and provide input regarding the Dirty Recycling process. They have the right to have their say, especially when a multi-million-dollar, multi-decade contract affecting one and all is involved. Quite simply, the process here did not comport with public policy.

---

[9] The Government *amici* argue that the Home Rule Act relieves the Government from the requirements of the Waste Disposal Statute. Ind. Code ch. 36-1-3. But the Home Rule Act provides that "[i]f there is a . . . statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." Ind. Code § 36-1-3-6(a). Here, section 4 of the Waste Disposal Statute requires a specific manner for entering into contracts relating to waste disposal facilities in Indianapolis, and even under the Home Rule Act, the Government must abide by its terms. Moreover, section 25 of the Waste Disposal statute explicitly states that "[a]s to facilities acquired, constructed, modified, operated, or leased under this chapter, and the collection of wastes under this chapter, it is not necessary to comply with other statutes concerning the acquisition, construction, modification, use, and maintenance of facilities or the collection of waste by cities . . . ." It is apparent that the legislature intended the Waste Disposal Statute to require local governmental entities to abide by its provisions. Therefore, the Home Rule Act does not provide cover to the Government in this case.

When taking a step back and viewing the Second Amendment as a whole, it is readily apparent that it is far more than a waste disposal services contract. Therefore, section 4 applies. As section 4 applies, the public bidding, request for proposals, and public notice/comment/hearing provisions should have been followed. They were not. Consequently, the Second Amendment is void and the Plaintiffs are entitled to summary judgment as a matter of law.

## B.  Length of Contract

Finally, we note that Indiana Code section 36-9-31-3(5) provides that contracts or agreements relating to the collection, disposal, or recovery of byproducts from waste may not exceed forty years. In late 1985, the City entered into the Original Agreement. The Second Amendment extended that agreement until 2028—a total period of forty-three years.

The trial court found that the effective start date for the contract term was the date the facility was fully operational and receiving waste from the Government, which the trial court found occurred on January 1, 1989. Therefore, according to the trial court, the Second Amendment did not violate the forty-year limit as the contract term began in 1989 rather than in 1985.

But the Original Agreement was undisputedly executed in 1985. And beginning in 1985, the parties had contractual obligations—including meeting financial obligations, issuing bonds, obtaining permits, designing the facility, meeting construction schedules, completing a lease agreement, facility testing, etc. Furthermore, the Original Agreement required the City to deliver a

specified amount of waste to the facility before the effective date, and the City agreed to pay penalties if it failed to do so. Therefore, the "effective date"[10] in the contract merely defines future trigger points in the contract rather than being synonymous with the actual start date of the contract for purposes of the forty-year time limit. The Plaintiffs note that the prohibition against any contract or agreement exceeding forty years "is broader than a prohibition against a contract for operating a facility at full capacity for over 40 years. It is immaterial that under the agreement the facility contracted for was not capable of processing acceptable waste at full capacity until some later date." Appellants' Br. p. 41.[11] As the Second Amendment exceeded the statutory forty-year time limit, it is void for this reason as well.

## Conclusion

In sum, we find and hold as follows:

> (1) the Waste Disposal Statute creates a right of action that does not limit who is entitled to enforce it;

---

[10] In addition to the "Effective Date," the Original Agreement contains other defined dates: the Acceptance Date, Construction Date, Contract Date, First Closing, Scheduled Acceptance Date, etc. But the contract itself commenced on the date it was entered into.

[11] Government *amici* state in a footnote that the First Amendment was not an amendment of the Original Agreement, but was instead a renegotiated and restated contract. Govt. Amici Br. p. 9 n.1. *Amici* contend, therefore, that the forty-year clock was reset in 2008 and that the Second Amendment does not run afoul of the time limitation. But *amici* do not fully develop this contention, and the Government does not raise this as an issue. Instead, the Government assumes that the First Amendment was just that—an amendment of the Original Agreement that did not reset the forty-year clock. In any event, we note that it does not pass the straight face test to argue that the government could "amend" its contracts in perpetuity without ever falling afoul of the forty-year time limit. This argument is unavailing.

(2) the Plaintiffs have standing to bring such an action under the public standing doctrine;

(3) section 4 of the Waste Disposal Statute applies to the Second Amendment;

(4) the provisions of section 4 relating to public participation and transparency were not followed;

(5) the contract exceeds the maximum length allowed by statute; and

(6) as a result of failure to comply with section 4, the Second Amendment is void.

[32] The judgment of the trial court is reversed and remanded with instructions to enter summary judgment in favor of the Plaintiffs.

Bradford, J., and Pyle, J., concur.